NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0913n.06

No. 10-4415

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 17, 2012*

LEONARD GREEN, Clerk

MELANIE CLINE, et al.,

     Plaintiffs-Appellees,

v.

DALE MYERS, et al.,

     Defendants-Appellants.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____/

Before:     MARTIN, GILMAN, and WHITE, Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge. This is a case about qualified immunity. Plaintiffs Melanie Cline, Kierre Fuller, Earl Fuller, Thomas Willis, and Kiana Willis, were present in a house located at 347 South Main Street on the night that house was searched by members of the Ontario, Ohio Police and the Allied Special Operations Response Team, a SWAT-like team composed, at least in part, of Ontario Police officers. Plaintiffs sued Detective Riley Snavely and then-Acting Police Chief Dale Myers, both officers of the Ontario Police, under 18 U.S.C. § 1983, claiming the officers had violated Plaintiffs' Fourth and Fourteenth Amendment rights during a search of the house by (1) obtaining and executing an invalid warrant; (2) employing excessive force while executing the search; and (3) detaining Plaintiffs for an unconstitutionally unreasonable amount of time despite knowledge that Plaintiffs had not committed a crime. Snavely and Myers moved for summary judgment on qualified immunity grounds. The district court denied their motions for

summary judgment; Snavely and Myers appeal. For the reasons that follow, we **AFFIRM** the judgment of the district court.

I.

The Ontario police sought to apprehend a man named Joseph Foster, who was suspected of entering a house, brandishing a gun, and stealing property from the house's residents. Snavely was approached by an unknown informant who stated that Foster was hiding in a house at 618 Burns Street. Snavely prepared an application for a warrant to enter 618 Burns Street and arrest Foster, and the Ontario police, along with the Allied Special Operations Response Team, began making arrangements to conduct surveillance on 618 Burns Street. Sometime thereafter, the informant told Snavely that Foster had moved to a house at 347 South Main Street. Snavely drove past 347 South Main Street with the informant, Detective Ed Schmidt of the Mansfield, Ohio, Police Department, and another unidentified individual familiar with Foster. The informant reported seeing Foster on the porch of 347 South Main Street at this time, but this statement was not corroborated by any police officers, nor does it appear in the search warrant later obtained for 347 South Main Street.

Snavely appeared before a magistrate with an affidavit applying for a "knock-and-announce" warrant for 347 South Main Street. But the affidavit contained facts relating only to 618 Burns Street, the house upon which the police had set up surveillance based on the original tip from the informant. However, the warrant listed 347 South Main Street, where the informant claimed Foster had moved, as the address of the house to be searched. Acting under this warrant, the police entered the house at 347 South Main Street to search for Foster. Plaintiffs testified that members of the entering police team used excessive force on them. Earl Fuller, for example, testified that he was

handcuffed and that, after the search had concluded, Myers kicked him twice despite the fact that Fuller was in handcuffs and not a suspect. Fuller also testified that he was detained for at least twenty-five minutes after the search had concluded; Snavely stated that he called the informant within minutes of the commencement of the raid to tell the informant that Foster was not present in the house.

Plaintiffs sued Snavely and then-Acting Chief Myers under 42 U.S.C. § 1983, claiming that the officers had violated Plaintiffs' Fourth and Fourteenth Amendment rights. They claim that Snavely violated those rights by obtaining and executing an invalid warrant. They claim that Myers violated those rights by employing excessive force while executing the warrant and detaining Plaintiffs for an unreasonable amount of time after realizing Plaintiffs had not committed a crime. Snavely and Myers moved for summary judgment, seeking qualified immunity from those claims. The district court denied their motions for summary judgment; Snavely and Myers appeal.

II.

Plaintiffs first argue that Snavely has waived his right to appeal the district court's denial of summary judgment on qualified immunity grounds because the district court found that Snavely failed to properly object to the magistrate judge's report and recommendation that recommended denying him summary judgment on this ground. "[T]he defense of qualified immunity may be deemed as waived if not properly and timely presented before the district court." *Brown v. Crowley*, 312 F.3d 782, 788 (6th Cir. 2002) (internal quotation marks omitted). The district court stated that "Snavely [did] not even cite the [report and recommendation] in briefing that he caption[ed] as 'objections' to [the report and recommendation]." Most importantly, Snavely did not make a single

specific objection in his "Objections" brief; he made only a general objection to the report as a whole. "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless." *Neuman v. Rivers*, 125 F.3d 315, 323 (6th Cir. 1997). The district court ruled that Snavely did not preserve his right to further review of the report and recommendation because of his failure to make specific objections. But the district court nevertheless went on to explain that, even if it were to decide the issue on the merits, Snavely's assertion of qualified immunity would fail. Because we conclude that the district court correctly analyzed the merits of the qualified-immunity issue, we need not decide if Snavely waived his right to seek review of the magistrate judge's report and recommendation.

### III.

Before we discuss the merits of the appeals, we must determine whether we have jurisdiction over these appeals. "[I]nterlocutory appeals—appeals before the end of district court proceedings—are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). "[A] district court's order denying a defendant's motion for summary judgment [is] an immediately appealable collateral order . . . where (1) the defendant [is] a public official asserting a defense of qualified immunity, and (2) the issue appealed concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given facts show[] a violation of clearly established law." *Id.* at 311 (internal quotation marks omitted). The district court denied summary judgment to Snavely and Myers because it found genuine issues of material fact as to whether they were due

qualified immunity. Plaintiffs assert that Snavely and Myers cannot appeal the district court's denial of qualified immunity because they merely contest facts on appeal.

Both Snavely and Myers, however, submit arguments concerning, at least in part, "whether or not certain given facts show[] a violation of clearly established law." *Id.* For this reason, we have jurisdiction over both Snavely's and Myers's interlocutory appeals.

IV.

"We review the district court's denial of summary judgment de novo." *Watson v. Solis*, __F.3d __, 2012 WL 3240350, at *2 (6th Cir. Aug. 10, 2012). We follow two steps to determine whether a defendant is due qualified immunity. First, we determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, we ask "whether the right was clearly established." *Id.* Under *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), we may address either question first.

*A.    Snavely*

The district court denied Snavely's motion for summary judgment on qualified immunity grounds related to the search warrant that he obtained and executed in the search of 347 South Main Street. Even though the district court rested its ruling on its finding of waiver, it discussed the merits of this issue. The district court stated that fact questions remained with respect to whether Snavely (1) acted with reckless disregard for the truth when obtaining the warrant, and (2) executed the warrant without "assess[ing] the affidavit upon which the warrant was based." *See United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

"An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). Construing the evidence in favor of Plaintiffs, the alleged action by Snavely would violate clearly established law. "To overcome an officer's entitlement to qualified immunity, however, a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.* Plaintiffs produced evidence tending to establish these elements, including Snavely's deposition testimony that he "didn't agree or disagree" with the alteration made to the affidavit that changed the address of the house to be searched from 618 Burns Street to 347 South Main Street; the warrant's failure to allege that Foster was present at 347 South Main Street; the fact that no police officer corroborated the confidential informant's statement that Foster was present at that address; and the warrant's inclusion of facts relating only to 618 Burns Street, where Foster was initially thought to be hiding. Construed in favor of Plaintiffs, this evidence would allow a jury to conclude, or at least infer, that Snavely swore to the statements in the supporting affidavit with a reckless disregard for the truth and that the information was "material to the finding of probable cause." *Id.* Thus, questions of material fact remain as to whether Snavely's actions were made with reckless disregard for the truth, and whether the information was material to the finding of probable cause. For this reason, we affirm the district court's denial of summary judgment on qualified immunity grounds to Snavely. Because we affirm on this ground, we need not consider whether Snavely executed the warrant without "assess[ing] the affidavit upon which the warrant was based." *See Washington*, 380 F. 3d at 241.

   B.  *Myers*

   *1.*  *Excessive force*Plaintiffs allege that Myers kicked Fuller "after the conclusion of the search" of the house, even though Fuller was "cuffed and suspected of no crime." They allege the kicks constituted an unreasonable use of force. "This court determines the reasonableness of [officers'] use of force by performing a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (internal quotation marks omitted). "The court weighs [a plaintiff's] interest in not being [subjected to excessive force] against the [officers'] interest in performing these actions, as gauged by the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks omitted). The cases in this Circuit "clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Id.* at 688. Further, we have held that "the use of force after a suspect has been incapacitated by mace would be excessive as a matter of law." *Id.* at 687 (internal quotation marks omitted).

  Here, Fuller was not a suspect, he was in restraining handcuffs, and he was lying on his side on the floor when Myers allegedly kicked him. A jury could reasonably conclude that all of these facts outweigh Myers's interest in subduing Fuller by kicking him. Myers contends in his briefing that there is no genuine issue of material fact about his use of force, but the opposite is true. Because the testimony presents a question as to whether the kick occurred, there exists a genuine issue of

material fact on the excessive force claim. We affirm the district court's denial of Myers's motion for summary judgment on qualified immunity grounds on this claim.

2.      *Excessive period of detention*

Plaintiffs also contend that Myers detained them for an excessive period of time—at least twenty-five minutes—after Myers knew that Foster was not in the house. In support of their contention that Myers knew that Foster was not in the house being searched, Plaintiffs cite the fact that Snavely called the confidential informant within minutes of the beginning of the raid to tell him that Foster was not in the house. Further, Fuller testified that he was restrained for an estimated twenty-five minutes. Together, this evidence shows that there is at least a genuine issue of material fact as to whether Fuller was restrained for some time after the police realized Foster was not in the house at 347 South Main Street.

The prohibition against extended detention after the conclusion of a search was clearly established at the time the house at 347 South Main Street was searched. In *Pray v. City of Sandusky*, 49 F.3d 1154, 1160 (6th Cir. 1995), we upheld a denial of summary judgment on qualified immunity grounds where officers remained in a house and restrained its residents for four or five minutes after they realized they were in the wrong house. *See also Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (upholding denial of summary judgment on qualified immunity grounds where questions of fact remained about "whether Defendants continued to detain Plaintiffs at gunpoint long after the risk of flight and risk to the officers subsided, particularly in light of the rationale behind the limited authority to detain the occupants of a premises during a proper search"); *Jernigan v. City of Royal Oak*, 202 F. App'x 892, 896 (6th Cir. 2006) (upholding denial of summary

judgment on qualified immunity grounds where officers handcuffed three men and detained them in police cars, and then "took . . . an hour to determine the startlingly obvious fact that the men had done nothing wrong").

Thus, construing the facts in favor of Plaintiffs, questions of fact remain as to whether the detention continued for twenty-five minutes and whether that was an unreasonably long time after the police realized that Foster was not in the house; both of these factual issues are relevant to determining whether the police violated a clearly established right. For these reasons, we affirm the judgment of the district court on this issue.

V.

Finally, Snavely and Myers claim immunity under Ohio state law, which grants government employees immunity from civil liability unless, *inter alia*, their "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03. Ohio courts have held that summary judgment on state-law immunity is improper where fact questions remain. *See, e.g.*, *Sampson v. Cuyahoga Metro. Housing Auth.*, 935 N.E.2d 98, 107 (Ohio Ct. App. 2010) ("Factual determinations as to whether conduct has risen to the level of wanton or reckless is normally reserved for trial."); *Alley v. Bettencourt*, 730 N.E.2d 1067, 1075 (Ohio Ct. App. 1999); *Ruth v. Jennings*, 736 N.E.2d 917, 921 (Ohio Ct. App. 1999). The district court concluded that it was improper to grant the officers immunity under section 2744, because whether Snavely and Myers acted with "malicious purpose, in bad faith, or in a wanton or reckless manner" is a fact question for the jury. For the same reasons that fact questions remain as to whether Snavely and Myers are due qualified immunity under federal law, the district court's denial of summary judgment

on state law immunity grounds was proper. We therefore affirm the denial of summary judgment

on Ohio state law immunity grounds.

## VI.

For all of the reasons set forth above, we affirm the judgment of the district court.