RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0207p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LeROD BUTLER,

        *Plaintiff-Appellee*,

*v.*

CITY OF DETROIT, MICHIGAN,

        *Defendant*,

RADAMES BENITEZ; DAVID MEADOWS,

        *Defendants-Appellants*.

> No. 18-1605

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-14272—Stephen J. Murphy, III, District Judge.

Argued: March 15, 2019

Decided and Filed: August 22, 2019

Before: MERRITT, LARSEN, and READLER, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** Sheri L. Whyte, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellants. David A. Robinson, ROBINSON & ASSOCIATES, PC, Southfield, Michigan, for Appellee. **ON BRIEF:** Sheri L. Whyte, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellants. David A. Robinson, ROBINSON & ASSOCIATES, PC, Southfield, Michigan, Thomas E. Kuhn, THOMAS E. KUHN, P.C., Detroit, Michigan, for Appellee.

_____

[*]Judge Damon J. Keith, who heard oral argument in this case, died on April 28, 2019. Per order of the court, Judge Chad A. Readler took part in subsequent deliberation as a member of the panel. *See* 28 U.S.C. § 46(a).

LARSEN, J., delivered the opinion of the court in which READLER, J., joined, and MERRITT, J., joined in part. MERRITT, J. (pp. 19–24), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

LARSEN, Circuit Judge.  LeRod Butler's home was the subject of an allegedly misguided search as part of a drug investigation in which Butler was not charged with any crimes.  Butler sued the City of Detroit and two police officers under 42 U.S.C. § 1983 for claims arising from the search.  The district court denied qualified immunity on summary judgment, and the police officers appealed.  We AFFIRM in part and REVERSE in part.

I.

"[A] defendant challenging the denial of summary judgment on qualified immunity grounds must be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal," *Hooper v. Plummer*, 887 F.3d 744, 757 (6th Cir. 2018) (alteration omitted).  Accordingly, we present the facts in that light.

In December 2015, Detroit police officer Radames Benitez swore out an affidavit for a warrant to search a home located at 12011 Bramell.  In the first paragraph of the affidavit, Benitez averred that he was an experienced narcotics investigator and that he had been working with a confidential informant, who "ha[d] provided [Benitez] with information on over four other narcotic investigations."  These investigations "resulted in felony and misdemeanor arrests and the confiscation of narcotics, weapons, US currency and vehicles."  Additionally, the informant was "familiar with the appearance and packing of all types of narcotics."

In the second paragraph, Benitez averred that this informant had told him in October 2015 that the informant had "be[en] at" three addresses, "9542 Burnette, 9561 Burnette and 12011 BRAMELL, (Hereafter referred to as the Target Location), within the last twenty four hours and numerous times in the past," and that a certain drug dealer "ha[d] been selling cocaine and heroin out of 9542 Burnette for several months."  Furthermore, this informant told Benitez

that the dealer "use[d] target location"—defined just sentences prior as 12011 Bramell—"and 9561 Burnette to stash large amounts of narcotics and US currency." The informant identified the dealer and his two cars, a "blue Chevy pickup" and a "gray Hyundai." The informant also identified an associate of the drug dealer who drove a "brown Chevy van."

Two days later, the same informant let Benitez know that he had again "be[en] at 9542 Burnette . . . within the [previous] twenty four hours" and had watched someone buy cocaine from the dealer. Benitez discovered that the dealer had previous convictions for assault and homicide. He also discovered that both cars the informant had identified (the blue Chevy pickup and the gray Hyundai) were registered to the dealer, whose residence was listed as 9561 Burnette Street. A few days later, the informant told Benitez that he had witnessed another cocaine sale at 9542 Burnette Street. Apart from the initial tip about 12011 Bramell, the informant supplied no new information about activity at 12011 Bramell.

Based on this information, Benitez decided to look into the three addresses. According to the affidavit, one day in November 2015, Benitez "sat near 9542 [Burnette] in an undercover capacity for approximately thirty minutes," during which he "observed [the] above mentioned green[1] Chevy pickup parked in front of the target location and the gray Hyundai parked in the rear of 9542 Burnette." There was also a "brown van parked in front of 9542 Burnette." But something is off here. Recall that the affidavit had said in the second paragraph (describing the informant's tip) that "target location" would refer to 12011 Bramell. And now consider that Burnette Street and Bramell are eight miles apart. Considering these two facts, Benitez could not possibly have "sat near 9542 [Burnette]" and simultaneously "observed" a car parked in front of 12011 Bramell, the "target location." Yet so says the affidavit.

The affidavit then describes what appeared to Benitez to be a drug transaction: a man matching the informant's description of the drug dealer got out of the associate's brown van and "walk[ed] to the rear of the target location," briefly disappeared, and then returned to the brown van. The dealer, the associate, and a driver who arrived in a black Dodge went in and out of 9542 Burnette Street. Then another driver, who Benitez recognized from previous narcotics

---

[1]This probably refers to the "blue Chevy pickup" mentioned earlier in the affidavit; no other similar vehicle was "above mentioned."

investigations, arrived in a white Chevrolet and handed a brown bag to the associate, who was sitting in the brown van. The white Chevrolet drove off, and the associate went into 9542 Burnette Street again with the brown bag. "Seconds later," he "exited without the brown bag at hand and drove off in the brown van." Benitez followed the associate to 12011 Bramell and watched him "enter the target location." The first usages of "target location" in this paragraph must be mistaken because Burnette and Bramell are eight miles apart and Benitez could not have seen both simultaneously. The last usage in this paragraph, on the other hand, involving the associate's drive to the Bramell house, seems facially consistent with Bramell as the "target location"; Benitez avers that he followed the associate's van from Burnette Street to Bramell.

A few weeks later, in December 2015, Benitez conducted another round of surveillance. The affidavit (repeating the same inaccurate shorthand as before) states that he "sat near the target location in an undercover capacity for approximately thirty minutes," and during that time he "observed above mentioned blue Chevy pickup parked in front of the target location and the gray Hyundai parked in the rear of 9542 Burnette." He watched another elaborate ritual of cars pulling up in rapid succession and the drug dealer going back and forth between 9542 Burnette Street and "the target location." But again, this cannot be correct as written. If "target location" refers to 12011 Bramell, as the affidavit had previously stated that it would, Benitez would be averring that he sat "near" 12011 Bramell and watched goings-on on Burnette Street, eight miles away—not possible. But that is what the affidavit says.

After the December stakeout, Benitez's informant let him know that he or she had witnessed a heroin sale at 9542 Burnette Street. Benitez decided to have the informant conduct a controlled drug purchase at 9542 Burnette Street two days later. On the day of the controlled buy, Benitez searched the informant for drugs and money, and gave him (or her) cash to buy drugs from the dealer. The affidavit states that Benitez then watched the informant walk into "the target location" for the controlled buy. (Again, if "target location" means 12011 Bramell, this conflicts with the statement earlier in the same paragraph that the plan was to conduct a controlled purchase at 9542 Burnette Street.) After a short time, the informant "returned directly back" to Benitez and handed him heroin that he had purchased from the dealer.

Benitez swore out his affidavit the day after the controlled buy; a state magistrate issued a search warrant based on the affidavit, and the Detroit police executed the warrant at 12011 Bramell.**2** As it turned out, the owner of 12011 Bramell was LeRod Butler, a fifty-one year old retiree with no prior convictions or links of any kind to drug operations. Butler was at a car wash when the police entered his home, and he received a phone call from his home security company informing him of a break-in. He returned home and, finding several police officers and vehicles outside his home, parked across the street. Butler approached the officers, saying he was the homeowner. The officers asked for his ID, which he willingly provided; he also informed them he had a concealed pistol license and was carrying a weapon. The officers took his wallet and pistol.

Butler was then handcuffed and brought inside the house, where Sergeant Meadows "slammed" him "against the wall" face first. Unbeknownst to Sergeant Meadows, Butler had sustained a serious neck injury during previous military service, resulting in a spinal fusion operation and, later, a disability-based retirement from Chrysler. The "slam" reinjured Butler's neck and lower back. From the house, the police recovered $3,702 cash, weapons, ammunition, a bulletproof vest, and a bottle of pills that ultimately turned out to be ibuprofen. The police also seized $1,640 cash from Butler's person. The state never filed charges against Butler based on the evidence seized. Butler was fully cooperative throughout the encounter.

Butler filed a § 1983 lawsuit against the City of Detroit, three named Detroit police officers (Benitez, Meadows, and Joi Gaines, who participated in the search), and several unknown police officers. Butler brought claims for excessive force against him, excessive force in executing the search warrant, unreasonable search based on misrepresentations in the warrant affidavit, unreasonable seizure (Butler claims the cash was never returned after the search), First Amendment retaliation, and municipal liability for unconstitutional procedures. The district court granted summary judgment for Gaines on all claims; for Benitez on all claims except unreasonable search; and for Meadows on all claims except the excessive force claim relating to the "slam." The district court denied the City's summary judgment motion, and the City did not

---

**2**Although not directly reflected in the record, we gather from the briefing that Benitez also sought and executed a search warrant for 9542 Burnette.

appeal.  Only the unreasonable search and excessive force claims against Benitez and Meadows, respectively, are at issue in this appeal.

## II.

We review the district court's summary judgment decision de novo, applying the same standards the district court used.  *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018).  "[S]ummary judgment is warranted only if 'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a) and *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).  We also review de novo the grant or denial of qualified immunity.  *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).  When an officer raises a qualified immunity defense, we determine "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established."  *Harris v. Klare*, 902 F.3d 630, 637 (6th Cir. 2018).

"While most denials of summary judgment are nonfinal orders which cannot be appealed pursuant to 28 U.S.C. § 1291, it is well established that an order denying qualified immunity is immediately appealable."  *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).  The general rule is that this court only has appellate jurisdiction to entertain legal challenges in this interlocutory posture. *See generally Johnson v. Jones*, 515 U.S. 304 (1995).  Thus, a defendant challenging a denial of summary judgment on qualified immunity grounds must "be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal."  *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009).

## III.

Butler asserted a Fourth Amendment claim against Benitez, alleging that Benitez had made false statements in the warrant affidavit which lead the magistrate to find probable cause to

search 12011 Bramell.  In support of this claim, Butler points to the various instances in which Benitez averred he had been on Burnette and had seen activity occurring around the "target location," or vice versa.  Obviously, an optical feat of this nature would be impossible; Burnette Street and Bramell are eight miles apart.  And so these "target location" statements are at least inaccurate.

Butler likewise contradicts the affidavit's account that, in November 2015, the associate had driven his brown Chevy van from Burnette Street to 12011 Bramell and entered the residence.  Butler testified that neither the dealer nor the associate—or anyone matching their descriptions, for that matter—had ever been in his house.  He said he had installed an "extensive camera and security system" because of previous burglaries, and so would have received a call from his security company had the dealer or associate entered his home without his permission— just as he received such a call when the officers executed the warrant and entered his home.  Thus, Butler claimed that the affidavit's references to the "target location" and its account of the associate's visit to 12011 Bramell were material falsehoods submitted to wrongly obtain a search warrant.  But for the reasons below, we conclude that Benitez is entitled to qualified immunity.

A.

We have never required that police officers be infallible to avoid liability under 42 U.S.C. § 1983.  Instead, the doctrine of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  In the context of a Fourth Amendment claim that a police officer lied in a search warrant, we have distilled a specific inquiry.  "To overcome an officer's entitlement to qualified immunity," a § 1983 plaintiff must make "a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).  In addition, the plaintiff must then show "that the allegedly false or omitted information was material to the finding of probable cause." *Id.*

This court derived the *Vakilian* standard from the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1973).  In *Franks*, a criminal defendant moved to suppress evidence seized during a search of his apartment. *Id.* at 157–58.  He requested an evidentiary hearing to

prove his allegations that officers had made false statements in their search warrant affidavits. *Id.* at 159–60. The Supreme Court determined that the Fourth Amendment's exclusionary rule allowed a defendant, in narrow circumstances, to attack the veracity of a search warrant affidavit. *Id.* at 164–65. The Court, however, carefully circumscribed the opportunity to do so, recognizing the need to give respectful deference to a magistrate's probable cause determination. *Id.* at 166–67. The bottom line was that an evidentiary hearing on the affidavit's truthfulness was required *only* if the defendant alleged "deliberate falsehood or . . . reckless disregard for the truth." *Id.* at 171. "Allegations of negligence or innocent mistake," the Court emphasized, would be "insufficient." *Id.* And the allegations of deliberate or reckless falsehood "must be accompanied by an offer of proof." *Id.* Even having satisfied these steps, a defendant must still show that "when material that is the subject of the alleged falsity or reckless disregard is set to one side," the affidavit's remainder no longer demonstrates probable cause. *Id.* at 171–72. Only then is a defendant entitled to a *Franks* hearing to prove his allegations. *Id.* at 172. *Franks* thus drew an evidentiary line with reference to the well-known common-law scienter standards: negligence, recklessness, and willfulness. *See* Restatement (Second) of Torts §§ 8A, 282, 500 (1965). Only "substantial" evidence tending to show one of the two more culpable mental states, *Franks* said, would do.

By applying *Franks* to § 1983 claims in *Vakilian*, we implicitly recognized that, while police officers sometimes make mistakes, only "deliberate falsehood . . . or reckless disregard for the truth" should make an officer ineligible for qualified immunity. *Vakilian*, 335 F.3d at 517. This gives an officer "breathing room" to do her job. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). We must also remember that search warrants "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). Implicit in *Vakilian*'s demanding standard is the recognition that a police officer swearing out an affidavit can make mistakes and yet remain protected by qualified immunity. *See Vakilian*, 335 F.3d at 517. To overcome this immunity, a plaintiff must present "substantial" evidence to show a more culpable mental state.

Butler has not met this exacting standard.  And even were we to indulge the assumption that he had, he has not shown that the warrant, when stripped of the false claims, would fail to establish probable cause.  He has thus failed to meet either *Vakilian* prong.

### B.

The warrant affidavit's first falsehood, according to Butler, is Benitez's claim that he watched the associate go into Butler's house.  The warrant affidavit recounted that Benitez watched the associate drive the "brown van to 12011 Bramell" and then go into the house.  Butler's affidavit, however, stated that nobody matching that description had ever entered his home while he was there, and his "extensive camera and security system" would have notified him if such a person had entered while he was not there.

But this is not enough to satisfy *Vakilian*.  The key shortcoming with Butler's evidence is that it tells us nothing about Benitez's mental state, which (under *Vakilian*) is critical to the qualified immunity question.  We have never said that a plaintiff shows "deliberate falsehood" by simply contradicting a warrant affidavit.  For example, if an officer stated in an affidavit that he saw John Doe selling drugs on a certain street corner, and John Doe testified in response that he was, in fact, neither selling drugs nor at that corner at the time, that *alone* would not be enough to deny the officer qualified immunity.  After all, even taking Doe's version as true, we would still have no support for the next, crucial inferential step—that the officer *lied* when he said he saw Doe selling drugs.  Doe's hypothetical testimony ("I wasn't there and didn't do that") is consistent with a bald-faced lie or reckless disregard for the truth, to be sure.  But it is also just as consistent with negligence or innocent mistake; the officer might have observed someone bearing a close resemblance to Doe and mistakenly believed him to be Doe.

*Franks* and *Vakilian* require something more.  A plaintiff shows substantial evidence of deliberate falsehood or reckless disregard when, for example, he presents proof that at the time the officer swore out the affidavit, she knew of or possessed information that contradicted the sworn assertions.  Under *Vakilian*, such a showing gets the § 1983 plaintiff past the qualified-immunity hurdle because it shows that no reasonable officer with access to the contradictory

information would have sworn out such an affidavit.  Butler has presented evidence only of facts known to himself, not evidence of facts known to Benitez.

For example, in *Scott v. Sanders*, 482 F. App'x 996, 996 (6th Cir. 2012) (per curiam), the § 1983 plaintiff claimed that the warrant affidavit misrepresented the location of his fingerprint at the crime scene and omitted evidence favorable to him.  But we said that the officers were entitled to summary judgment because there was "no evidence that [the officers] were anything worse than negligent."  *Id.* at 997.  In *United States v. Fields*, 229 F.3d 1154, at *1 (6th Cir. 2000) (per curiam) (table), an analogous criminal case, a warrant affidavit relayed an informant's account to two detectives that she had seen two people "storing and selling [c]ocaine in [a specific] residence" over the previous five days.  The defendant, indicted on charges arising from the resulting search, requested a *Franks* hearing and submitted a supporting affidavit from his landlady.  *Id.* at *3.  The landlady's affidavit stated that the property was actually vacant during the period the informant described; furthermore, the landlady was at the property "nearly on a daily basis" and "never saw persons matching the description" the informant provided.  *Id.*  The landlady averred unequivocally that she was "unaware of any drug activity on her property."  *Id.*  In other words, the evidence simply contradicted the warrant affidavit's factual assertions, as Butler has done here.  We said in *Fields* that the defendant had "produced evidence that some information in the affidavit was inaccurate," and we even speculated that "from that evidence it *might* be inferred that either the informant lied to the officers or the officers lied in their affidavit."  *Id.* at *4 (emphasis added).  Nevertheless, we held, "any inference concerning the officers' conduct *cannot be said to amount to substantial evidence* that they made false statements in the affidavit . . . with reckless disregard for the truth."  *Id.* (emphasis added).

Compare *Scott* and *Fields* to cases in which litigants did satisfy the *Franks*/*Vakilian* standard.  In *Wesley v. Campbell*, 864 F.3d 433, 436, 440–41 (6th Cir. 2017), the plaintiff presented evidence that an informant's information was "implausible" *and* that the officer reasonably should have known it was implausible based on his own efforts to corroborate it.  That, *plus* evidence that the officer had omitted information casting doubt on the informant's credibility, was enough to constitute substantial evidence of reckless disregard for the truth.  *Id.*  Along the same lines, in *McGallum v. Geelhood*, 742 F. App'x 985, 991–93 (6th Cir. 2018), we

said that evidence showing that an officer had not spoken to an informant as the officer's affidavit stated, combined with the officer's admission that she had drafted the affidavit to give the false appearance of having spoken to the informant, was substantial evidence of at least reckless disregard for the truth. And in the analogous context of a malicious prosecution claim in *King v. Harwood*, 852 F.3d 568, 583 (6th Cir. 2017), we concluded that an officer was not entitled to qualified immunity because the officer had initiated a prosecution despite possessing ballistics reports that clearly showed the plaintiff's firearm was not the murder weapon and that bullet holes in the plaintiff's kitchen floor were not caused by the bullets that killed the victim. Thus, the plaintiff had shown evidence of "knowing[] or reckless[]" falsehood, *id.* at 582–83—a reasonable officer with access to the same information could not believe in good faith that his assertions were truthful. To the contrary, Butler here has presented no evidence relevant to Benitez's knowledge or state of mind when he drafted the affidavit.

Other circuits agree that there must be evidence of more than mere factual inaccuracy to overcome *Franks* in both criminal and § 1983 cases. Specifically, as we conclude now, our sister circuits have said that there must be evidence going to the officer's knowledge or state of mind at the time the officer wrote the allegedly false affidavit. *See, e.g.*, *Morris v. Lanpher*, 563 F.3d 399, 403 (8th Cir. 2009) ("The Morrises bore 'the burden of proving the intentional or reckless inclusion of false statements in a warrant affidavit.' . . . They offered no specific, nonconclusory evidence that Lanpher believed his affidavit was false, or recklessly misconstrued [the witness'] identification. . . . While we construe disputed facts in the non-moving parties' favor, we may not infer bad motive absent even a scintilla of material fact supporting that inference."); *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) ("In applying the reckless disregard test to assertions, we have borrowed from the free speech arena and equated reckless disregard for the truth with a 'high degree of awareness of the statements' probable falsity.'" (alteration omitted)); *Kelly v. Curtis*, 21 F.3d 1544, 1554–55 (11th Cir. 1994) (denying qualified immunity for false statement that a substance was cocaine, where plaintiff produced evidence that the officer had received a lab report stating that it was not); *see also United States v. Finley*, 612 F.3d 998, 1002 (8th Cir. 2010) ("[T]he applicable test is . . . whether, viewing all of the

evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.").[3]

Here, Butler has made no showing, much less a "substantial" one, that Benitez wrote the paragraph describing the associate's visit to 12011 Bramell *in spite of* knowledge or strong suspicion that it was false.  This alleged inaccuracy does not give rise to § 1983 liability.

C.

Butler next suggests that a jury could infer that the affidavit's several inaccurate references to the "target location" are evidence of reckless disregard for the truth.  But even viewing the evidence in the light most favorable to Butler, there has been no such showing, and certainly not the required "substantial showing."

In the warrant affidavit, Benitez wrote that the informant told him that he had been at 9542 Burnette, 9561 Burnette, and 12011 Bramell "within the last twenty four hours and numerous times in the past," and that the dealer "ha[d] been selling cocaine out of 9542 Burnette for several months."  This informant, furthermore, told Benitez that the dealer "use[d] target location"—identified in the affidavit just sentences earlier as 12011 Bramell—"and 9561 Burnette to stash large amounts of narcotics and US currency."  Butler presents nothing to cast doubt on whether the informant actually said this.

The affidavit then recounts how Benitez, relying on this information, began looking into the three houses in question more closely.  One day, the affidavit says, Benitez "sat near 9542 [Burnette] in an undercover capacity for approximately thirty minutes," during which he saw the green Chevy pickup and gray Hyundai identified by the informant; the pickup, the affidavit says, was "parked in front of the *target location*."  He later said that he was sitting at the "target location" (Bramell) and watching goings-on at the Burnette Street addresses.  Obviously, these

---

[3]The same principle undergirds these cases:  *Rainsberger v. Benner*, 913 F.3d 640, 651 (7th Cir. 2019); *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018); *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 557 (4th Cir. 2017); *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014); *Chism v. Washington*, 661 F.3d 380, 388 (9th Cir. 2011); *Miller v. Prince George's County*, 475 F.3d 621, 629 (4th Cir. 2007); *Mattoon v. Sue del Papa*, 161 F. App'x 672, 673 (9th Cir. 2006); *Snell v. Tunnell*, 920 F.2d 673, 697–98 (10th Cir. 1990); *see also United States v. White*, 850 F.3d 667, 674 (4th Cir. 2017).

statements cannot be accurate as written. But did Benitez lie? Did he make this statement with reckless disregard for the truth? Butler simply has no evidence from which we could infer a culpable mental state. In fact, when counsel asked Benitez during the deposition about the obvious inaccuracies, Benitez reviewed the affidavit and said that

> obviously . . . when I referred to target location, I was talking that on this date at this time I was actually near Burnette location. That's why all my facts are stated here of my observations of both Burnette address[es]. At this Burnette address is a reference to that location. So, yes, it should say—when I say target location, it means I was near 9542 Burnette.

Benitez explained that the mistakes in the "target location" label occurred because he "was also surveilling [the Burnette Street addresses] in conjunction with 12011 Bramell," and that "[t]hese three addresses were all together in reference to my investigation."

Benitez's testimony is not the "substantial evidence" of deliberate falsehood or reckless disregard that *Vakilian* requires. Benitez freely acknowledges that the references to "target location" in the paragraphs describing his stakeouts "obviously" refer to 9542 Burnette, and that he must have mixed them up because all three addresses were part of this single investigation. The testimony is just as consistent with innocent mistake or negligence as with recklessness or willfulness, and there is nothing more from which we could reasonably infer a culpable state of mind. *See Scott*, 482 F. App'x at 997.

These facts recall *United States v. Brown*, 732 F.3d 569, 575 (6th Cir. 2013), in which a defendant attempted unsuccessfully to satisfy *Franks* by pointing to factual inaccuracies in a warrant affidavit, combined with the officer's casual admission that he "must have typed it up wrong." Here, as in *Brown*, Benitez's candid admission of mistake is not evidence of calculated or reckless deception. And the mere fact that Benitez mistakenly labeled 9542 Burnette as the "target location" several times does not make an inference of willfulness or recklessness more plausible. To the contrary, "[i]f the officer made a negligent mistake once . . . in preparing the affidavit, . . . it would be unremarkable that he would have repeated the mistake." *United States v. Patterson*, 877 F.3d 419, 425 (1st Cir. 2017). Benitez's "repetition of the error does little to show that it was made intentionally rather than mistakenly." *Id.* Butler thus fails *Vakilian*'s first prong and Benitez retains his qualified immunity.

D.

Even assuming Butler had presented substantial evidence of deliberate or reckless falsehood, he would still come up short on *Vakilian*'s second prong, materiality. To overcome qualified immunity in this context, a plaintiff must show "that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian*, 335 F.3d at 517. The allegedly false information is material only if the remainder of the affidavit is insufficient to show probable cause. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). Here, even spotting Butler everything in the affidavit that he claims is deliberately or recklessly false, the remaining affidavit material still establishes probable cause to search Butler's house.

Here is what remains: a confidential informant known to Benitez, who had provided reliable information in four successful narcotics investigations, told Benitez that he had been at 9542 Burnette, 9561 Burnette, and 12011 Bramell "within the last twenty four hours and numerous times in the past." This informant told Benitez that he had seen the dealer "sell cocaine and heroin to other buyers." According to the informant, the dealer "live[d] at 9542 Burnette," but used 12011 Bramell and 9561 Burnette "to stash large amounts of narcotics and US currency." This arrangement was plausible because, in Benitez's experience, "[o]ne house is generally used to sell out of[] while other houses are used as stash houses." The informant described the dealer's operation in detail: he "usually does not sell out of 9542 Burnette unless he knows you," and "mostly meets buyers on corner streets near 9542 and 9561 Burnette." The informant also named an accomplice and described the cars that both men drove.

Butler fails *Vakilian*'s second prong because the informant's tip alone—a single paragraph of the affidavit—would have sufficed to establish probable cause to search all three houses the informant identified, including 12011 Bramell. An affidavit relying solely on an informant's first-hand observations can establish probable cause if the affidavit gives the magistrate sufficient reason to conclude the informant is reliable. *See, e.g.*, *United States v. Hines*, 885 F.3d 919, 925 (6th Cir. 2018) ("[G]iven the informants' bases of knowledge, substantial independent police corroboration was unnecessary."); *Brown*, 732 F.3d at 572–74 (upholding a search warrant where the only information in the warrant affidavit was the informant's tip that "he had seen cocaine and what he considered to be drug dealing at [the

suspect's] house" and information that the informant had given reliable information twice previously).**4** And the necessary proof of the informant's reliability is in the very first affidavit paragraph: he (or she) had previously provided reliable information in four successful narcotics investigations. *See Neal*, 577 F. App'x at 441 ("[A]n affidavit that furnishes details of an informant's track record of providing reliable tips to the affiant can substantiate the informant's credibility, such that other indicia of reliability may not be required when relying on the informant's statements." (citing *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc); *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005); *United States v. Helton*, 314 F.3d 812, 821 (6th Cir. 2003); *Moore*, 661 F.3d at 313)); *see also Allen*, 211 F.3d at 976 ("Corroboration is not a necessity in such a case."). Furthermore, the tip was based on the informant's own observations. *See Smith*, 182 F.3d at 479. For these reasons, Benitez could have procured a valid search warrant for 12011 Bramell solely on the basis of the informant's first tip—the information in a single paragraph of the affidavit. *See Brown*, 732 F.3d at 574. Nevertheless, he continued gathering further information to build his case—which itself significantly undercuts the notion that Benitez acted in "reckless disregard" of the truth in this investigation.

Two days later, the same informant returned to tell Benitez that he had seen the dealer sell cocaine at 9542 Burnette Street again. Benitez set out to corroborate, and did corroborate, important details in the information. He learned, for example, that the dealer had been previously arrested for drug crimes and violent crimes, as well as convicted of (among other felonies) second-degree murder. While serving a seventeen-year prison sentence for that

---

**4***See also United States v. Moore*, 661 F.3d 309, 311 (6th Cir. 2011) (finding probable cause where the warrant affidavit said only that the detective spoke "with a reliable informant who has given information in the past in regards to narcotics trafficking," who "stated that he/she ha[d] been at the above described residence within the past five . . . days . . . and ha[d] seen [an individual] storing and selling cocaine [there]"; *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) ("As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." (quoting *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005))); *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) ("Although either richness of detail or a heightened level of corroboration may be required where information is provided by an anonymous informant of unknown veracity, information supplied by an informant of proven reliability may be sufficient, standing alone, to demonstrate probable cause." (citations omitted)); *United States v. Neal*, 577 F. App'x 434, 440 (6th Cir. 2014) (stating that "courts insist that the affidavit contain substantial independent police corroboration" of informant tips only "in the absence of any [other] indicia of the informant's reliability").

conviction, the dealer had pled guilty to felony possession of contraband. *See Hines*, 885 F.3d at 926 (stating that suspects' criminal history "provid[es] the issuing judge with further independent corroboration of the informants' leads"). Benitez also confirmed that two of the vehicles the informant had identified were registered to the dealer, at one of the addresses the informant had named. At any time by this point, Benitez could have secured a valid search warrant for 12011 Bramell. True, Benitez had not corroborated any information about 12011 Bramell specifically, but the accuracy of the informant's information about the Burnette addresses would have been enough to show probable cause to search Bramell as well, given that the informant had previously linked the three addresses. *See, e.g.*, *id.* at 925 ("[I]f 'an informant is right about some things, he is more probably right about other facts' regarding the suspect's illegal activity." (quoting *Gates*, 462 U.S. at 244)).

But Benitez pressed on with his investigation, conducting surveillance at the Burnette addresses. And in the two half-hours he was there on two separate days, he personally observed activity consistent with the informant's tips. He watched people pull up to the Burnette addresses and go in; he watched the dealer come out with the visitors afterward; he watched a brown bag changing hands among various drivers, and then watched the associate carry the bag into 9542 Burnette. Benitez even recognized one of the drivers who visited; Benitez had personally participated in past raids where the driver had been arrested for drug crimes. Benitez, again, could have gotten a warrant at this point for 12011 Bramell, simply based on the informant's original statement and Benitez's partial corroboration. But Benitez kept investigating. The informant told him about another heroin purchase he (or she) had witnessed, and then Benitez carried out a successful controlled buy at 9542 Burnette.

Thus, Officer Benitez's research, personal surveillance, and controlled purchase constitute significant corroboration of the informant's original tip, which itself would have been sufficient to show probable cause to search 12011 Bramell. *See United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) (stating that even "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information" (citing *Gates*, 462 U.S. at 241–45)).

It is true that, removing the alleged falsehoods, Benitez had not personally seen any suspicious activity at 12011 Bramell. Nevertheless, he *had* corroborated what the informant had told him about the Burnette Street addresses. And, in fact, *everything* the informant had told him about those houses was spot-on. Police officers do not need to corroborate every detail provided by an informant to show the informant's reliability. *See, e.g.*, *Hines*, 885 F.3d at 925. So even without personally observing any drug activity at 12011 Bramell, Benitez put enough in the affidavit for a magistrate to conclude that the informant—who had been right about everything else—would likewise be right that 12011 Bramell was a "stash house." *See Hines*, 885 F.3d at 925; *Gates*, 462 U.S. at 244. Thus, considering the "totality of the circumstances," the affidavit "demonstrated a specific and concrete nexus between [12011 Bramell] and the evidence sought, and thus established probable cause for the search." *Hines*, 885 F.3d at 926.

In sum, even if Butler had presented substantial evidence of deliberate or reckless falsehood, he would still come up short on *Vakilian*'s materiality requirement. Because the remaining information shows ample probable cause to search 12011 Bramell, Benitez is entitled to qualified immunity on *Vakilian*'s second prong as well.

IV.

We turn finally to Butler's excessive force claim against Meadows. Butler asserts that although he was unfailingly cooperative with the police officers searching his home, Meadows nevertheless "slammed" him "against the wall" face first. Meadows' actions, Butler alleges, injured his already-compromised neck and lower back. Meadows responds in his brief before this court that Butler has alleged only that "he was shoved against a wall *one time.*" (emphasis in original). Meadows argues that in these circumstances, "a raid authorizing the officers to search for firearms and drugs," "a reasonable officer . . . would not have known that the force [Butler] alleges . . . would be considered excessive." "Remember," Meadows urges us, "the only force [Butler] is alleging is *one* shove against the wall."

We need not linger on this argument. Taking the facts in the light most favorable to Butler—that he was fully cooperative and yet was gratuitously "slammed" into the wall— Meadows has no claim to qualified immunity at this stage of the litigation. Assaulting an

unarmed and compliant individual has been a clearly established violation of the Fourth Amendment for decades. *See, e.g.*, *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994); *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988). And the Constitution says nothing about free passes for just "*one* shove against the wall," even during drug raids.

\* \* \*

For these reasons, we AFFIRM the denial of qualified immunity to Meadows on the excessive force claim, REVERSE the denial of qualified immunity to Benitez on the false affidavit claim, and REMAND for proceedings consistent with this opinion.

---
**CONCURRING IN PART AND DISSENTING IN PART**
---

MERRITT, Circuit Judge, concurring in part and dissenting in part. I respectfully dissent as to the majority's conclusion that Butler has not made a "substantial showing that [Benitez] stated a deliberate falsehood or showed reckless disregard for the truth," *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003), regarding the wrongful search of Butler's home at 12011 Bramell in Detroit. Taking the facts in the light most favorable to Butler, as we must, a jury could find that Butler made the necessary substantial showing, and we should affirm the district court's denial of qualified immunity to Benitez. The district court was correct to send the issues to the jury. The jury may find that the Fourth Amendment ("The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated.") has been seriously abridged in this case.

**I.**

Benitez stated in the affidavit attached to the application for the search warrant that on October 27, 2015:

> Affiant [Benitez] was advised by the registered [confidential informant] of being at 9542 Burnette, 9561 Burnette and **12011 BRAMELL (Hereafter referred to as the Target Location)**, within the last twenty-four hours and numerous times in the past. . . . That Subject #1 lives at 9542 Burnette. That Subject #1 uses target location and 9561 Burnette to stash large amounts of narcotics and US currency.

Search Warrant Aff. at 2. 12011 Bramell is about eight miles from the Burnette Street addresses, and Benitez admitted in his deposition that references to the "target location" in his affidavit did not refer to 12011 Bramell, but rather to 9542 Burnette, the home of Subject #1, Andrew Witcher. Benitez Dep. at 29-30. Benitez's affidavit also states in the sixth paragraph that on November 9, 2015:

> Subject #1 appeared from the rear of the target location and entered the brown van. Minutes later, the black male exited the brown van and walked to 9542 Burnette and entered. Affiant observed a black Dodge pull up with a black male driver entering 9542 Burnette. Minutes later, the black male exited with Subject #1. The black male driver drove off in the black Dodge and Subject #1

entered 9542 Burnette. Affiant observed a white Chevy minivan with Michigan plate #DGH7099 pull up next to the driver window of the brown van. The white Chevy minivan driver handed the driver of the brown van a brown bag through the window. The white Chevy minivan drove off and past Affiant. Affiant recognized and [identified] the driver of the white Chevy minivan as Keir Marcel Vantress dob# 06-05-1971. The black male driver of the brown van matching Subject #2's description walked to and entered 9542 Burnette with the brown bag in hand. Seconds later, Subject #2 exited without the brown bag and drove off in the brown van. **Affiant followed the brown van to 12011 Bramell (Hereafter the Target Location). Affiant observed Subject #2 enter the target location. Minutes later, the black male exited and drove off in the brown van.** Affiant attempted to follow without success.

Benitez Aff. at 3 (boldface type is the alleged false statement). Then in the next paragraph Benitez states:

On 12-27-2015, Affiant sat near the target location in an undercover capacity for approximately 30 minutes. Affiant observed above mentioned blue Chevy pickup parked in front of the target location and the gray Hyundai parked in the rear of 9542 Burnette. Affiant observed a black Chrysler pull up with the black male driver entering 9542 Burnette. Seconds later, the black male driver exited and drove off in the black Chrysler. Affiant observed a black male matching Subject #1's description exit 9542 Burnette and walk to the rear of the target location. Minutes later, Affiant observed Subject #1 appear from the rear of the target location and entered 9542 Burnette.

*Id*. Keeping in mind that the "target location" is eight miles away from the observed drug activity at 9542 Burnette, the affidavit for a search at 12011 Bramell cannot provide the necessary probable cause for a search warrant. The use of the "target location" phrase and the confusion it creates was not recognized by the Detroit magistrate judge who signed the search warrant for plaintiff's house at 12011 Bramell.

## II.

We have established that an action under § 1983 may lie against an officer who obtains an invalid search warrant by making material false statements in his affidavit either knowingly or in reckless disregard for the truth. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989). Under *Franks v. Delaware,* 438 U.S. 154 (1978), plaintiff must make a "substantial preliminary showing" that Benitez "knowingly and intentionally, or with reckless disregard for the truth" included a false statement in the warrant affidavit. *Id*. at 155–56. Following *Franks*, we

established a two-prong test that a plaintiff must meet "[t]o overcome an officer's entitlement to qualified immunity." *Vakilian*, 335 F.3d at 517. Under the test, a plaintiff must make "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id*.

## A. **Butler Has Made a Sufficient Showing under *Franks* to Go to a Jury**

Butler avers that "Benitez's affidavit which indicates that an individual or vehicle identified in his search warrant (specifically Subject #2 in a brown van) came to my home is inaccurate and untruthful." Butler Aff. ¶ 9. In other words, plaintiff does not allege that Benitez made a simple mistake, he states that Benítez has filed a false affidavit. Benitez admits that it "obviously was" the Burnette location he was referencing when he repeatedly named the "target location." Benitez Dep. at 29-30 ("[W]hen I say target location, it means I was near 9542 Burnette."). This error standing alone may be regarded as simply a mistake, but on the question of Benitez's claims in paragraph 3 of his affidavit that he followed Subject #2 to 12011 Bramell and then observed someone entering Butler's home on Bramell, Butler has flatly refuted Benitez's facts in the affidavit as "untruthful." Butler Aff. at ¶ 9. Butler's charge of falsehood against Benitez is strengthened by his assertion he had an "extensive camera and security system," and he states that at no time did anyone matching the descriptions of Subject #1 or Subject #2 enter his home, and no vehicles matching the descriptions from the affidavit entered his driveway. *Id*. at ¶¶ 5-9.

Our earlier decision in *Hill v. McIntyre* is similar. In *Hill*, police officers raided and searched the wrong house for narcotics. The officer who had obtained the warrant had identified a house next to the house where the drug dealing was allegedly occurring. His mistake was based on information provided by an informant who had given a description of the house to be searched. After the close of plaintiff's case, the district court granted defendants' motion for a directed verdict based on the validity of the warrant. Our court reversed, holding that it was up to the jury to decide whether the officer displayed a reckless disregard for the truth when he mistakenly identified the house. Even if we assume the confidential informant is reliable concerning the information about the two Burnette Street locations, factual questions remain

regarding Benitez's claim in his affidavit that he followed Suspect #2 to Butler's home on Bramell eight miles away from Burnette Street. "While the Court is necessarily the factfinder in a *Franks* suppression hearing preliminary to a criminal trial, in a § 1983 action factfinding under the *Franks* standard is the province of the jury." *Hill*, 884 F.2d at 275 (citing *Hindman v. City of Paris, Tex.*, 746 F.2d 1063, 1067 (5th Cir. 1984)). An officer's care, truthfulness, and intent at the time he applied for the warrant is one of fact for the jury.

This evidence, taken in the light most favorable to Butler, makes the required "substantial showing" of deliberate falsehood or reckless disregard for the truth. Benitez has not rebutted this evidence from Butler's affidavit, and there is no dispute that Benitez made several serious misstatements in his affidavit. A jury could find that Benitez falsified the claim of observing the entry into Butler's home. We cannot say how it happened that Benitez drafted and was able to get a magistrate to approve a search warrant based on the erroneous and confusing affidavit, but we do not need to. At summary judgment, we do not decide the facts. What matters at this stage is that, accepting the account most favorable to plaintiff, a reasonable jury could conclude that Benitez's affidavit was drafted with, at the very least, a reckless disregard for the truth. A jury should weigh Butler's and Benitez's credibility and decide the issue. This "is the epitome of a triable issue of fact, one over which our authority recedes and the jury's takes over." *Smith v. Stoneburner*, 716 F.3d 926, 930 (6th Cir. 2013) (citation omitted); *see also Cline v. Myers*, 495 F. App'x 578, 582 (6th Cir. 2012) (denial of qualified immunity upheld where, applying Ohio law, questions of material fact remain as to whether defendant's actions were made with reckless disregard for the truth); *Hale v. Kart*, 396 F.3d 721, 726 n.4 (6th Cir. 2005) ("[O]ur holding today does not foreclose the possibility that in a § 1983 action, where a plaintiff makes a disputed showing of an affiant's intention to mislead, the facts underlying that alleged intention to mislead may have to be submitted to a jury rather than a judge deciding them on summary judgment."); *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991) ("[S]ummary judgment is inappropriate on this issue because there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the officers did acts which violate clearly established rights.").

B. **Materiality**

If plaintiff demonstrates that the officer deliberately misled the judge or made statements with reckless disregard for the truth, we proceed to *Franks*' second step—excising the "material that is the subject of the alleged falsity or reckless disregard." *Franks*, 438 U.S. at 171–72; *Vakilian*, 335 F.3d at 517. If the remainder of the affidavit is insufficient to establish probable cause, then the warrant violates the Fourth Amendment. *Hill*, 884 F.2d at 275. Setting aside the multiple references to the "target location" in the affidavit, as we must because Benitez did not intend for 12011 Bramell to be the "target location," the affidavit mentions 12011 Bramwell only one time other than the first entry on October 27 when he misidentifies 12011 Bramell as the "target location." In the November 9 entry, Benitez observed Subject #2 drop off what Benitez believed to be narcotics at 9542 Burnette and then drive to plaintiff's house on Bramell and go inside, only to reemerge and drive away minutes later. But as discussed above, this alleged observation is in dispute because plaintiff swore that "[a]t no time" did anyone matching Suspect #2's description "come to or enter my home[.]" Butler Aff. at ¶ 7. Furthermore, Benitez said that Suspect #2 did *not* have anything with him when he left 9542 Burnette and he did not carry anything into plaintiff's house or emerge with anything from plaintiff's house.

To establish probable cause for a search, "'an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity;'" and second, "'that the items will be found in the place to be searched.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n.6 (1978)). Searches for illegal drugs "need[ ] to satisfy only the second showing for a valid warrant: "a fair probability" that the drugs "will be found in a particular place." *Id.* (internal quotations and citation omitted). Absent references to the "target location," the affidavit does not satisfy the showing. While Benitez's source said he had visited 12011 Bramell, the affidavit does not indicate the purpose of the visits. The informant's information focuses only on the two Burnette Street addresses, which are eight miles from 12011 Bramell. The informant offers nothing about 12011 Bramell except the address. Any information about the activity around the Burnette addresses does not amount to "ample" probable cause as stated by the majority to allow the search of 12011 Bramell. The second reference, which Benitez states is based on his own

observation of 12011 Bramell, does not indicate that any item, much less drugs, was observed being carried in to or out of the house. And, of course, Butler disputes that anyone matching Benitez's descriptions, or any similar type of activity described by Benitez, ever occurred at his house, and he offered to submit the video from his security system to prove his claim. In sum, the majority concedes that Benitez did not corroborate *any* information about 12011 Bramell (Maj. Op. at 17), and the affidavit provides no support for a search of that location when stripped of its erroneous designation as the "target location." The references to 12011 Bramell in the affidavit do not establish probable cause to search the residence, and the warrant therefore violates the Fourth Amendment. Benitez is not entitled to qualified immunity.

The facts surrounding this search, viewed in a light most favorable to plaintiff, are sufficient for a reasonable jury to find that Benitez acted with at least reckless disregard for the truth, and that there was no probable cause to search plaintiff's home. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is not warranted for what is at best Benitez's irresponsible conduct, or, at worst, his deliberate falsehood in including an address in his affidavit for which he had no evidence of drug activity. If this case does not rise to the "substantial showing" necessary to pass the *Franks* standard as articulated by the majority, it is difficult to imagine what evidence a homeowner could produce that would redress the serious Fourth Amendment violation suffered at the hands of a rogue police officer armed with a warrant as confusing and error-filled as the one here.

While the majority wishes to chalk Benitez's affidavit up to mere sloppiness, a genuine issue of fact remains as to Benitez's state of mind and credibility. Because a triable issue of fact exists on Benitez's credibility concerning whether the faulty affidavit demonstrates a "deliberate falsehood" or "reckless disregard for the truth," and whether the affidavit would support a warrant when stripped of the false information, I dissent.