# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1449

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| John C. LaDue, II, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 16, 2008
Filed: April 9, 2009

_____

Before RILEY, BOWMAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

John C. LaDue, II, was convicted of unlawful possession of a firearm as a previously convicted felon. On appeal, LaDue argues that the district court[1] should have excluded certain testimony because it was irrelevant or unfairly prejudicial. He also argues that the evidence was insufficient to establish that he was in possession of a firearm. We affirm.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

I.

We recite the evidence in a light most favorable to the verdict. After a night of drinking with family members in Independence, Missouri, LaDue left his aunt's house in the car of his cousin, William Farris. LaDue was drunk, and Farris had agreed to drive him home. During the car ride, LaDue became increasingly angry and argumentative, accusing Farris of being a "snitch" for the police. LaDue punched the car's dashboard, prompting Farris to warn LaDue that he would have to walk home if he did not calm down. After another outburst, Farris ordered LaDue out of the car and left him on the side of the road at about 2:30 a.m.

From there, LaDue walked to the home of his ex-brother-in-law, Jonathan Prosser, and began pounding on the front door. Prosser came to the door but refused to admit LaDue. LaDue continued beating and kicking the door, threatening to break it down. After Prosser announced that he was calling the police, LaDue shouted some obscenities and left the residence.

In response to Prosser's call, Officer Allen Hiegert arrived at Prosser's home at approximately 4:15 a.m. Hiegert spoke with Prosser and then returned to his patrol car. At around 4:50 a.m., while checking the area for signs of LaDue, Hiegert received a report of "shots fired" in a nearby residential neighborhood. Hiegert decided to respond to the call and began driving toward the neighborhood. As he approached the reported location of the fired shots, Hiegert saw a man, later identified as LaDue, running at full speed across the street. Hiegert left his car and pursued LaDue onto a private driveway. There, Hiegert heard noise coming from behind a parked vehicle. Moving in the direction of the noise, Hiegert identified himself as a police officer and drew his service weapon. He spotted LaDue hiding behind the front of the vehicle, in a crouched position. Realizing that he had been seen, LaDue stood up with his hands raised, and Hiegert arrested him. Police found a .380-caliber semiautomatic pistol underneath the vehicle's front bumper, where LaDue's feet had

been. The owner of the residence and the vehicle, told police that the pistol did not belong to him, and that he had not seen it when he returned from work the previous evening at around 5:30 p.m.

LaDue was charged with unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). At trial, over LaDue's objections, Prosser and Hiegert testified about LaDue's aggressive behavior at Prosser's home, and Hiegert testified that he was responding to a report of "shots fired" when he arrested LaDue. A jury convicted LaDue, and the district court sentenced him to 180 months' imprisonment.

## II.

LaDue first challenges the admission of Hiegert's testimony that he was responding to a report of "shots fired." LaDue contends that the testimony should have been excluded as irrelevant, because it was not probative of any essential element of the charged offense. According to LaDue, the district court should have instructed Hiegert to testify simply that he had received a report of a disturbance, without mentioning gunfire. We review the district court's evidentiary ruling for abuse of discretion. *See United States v. Lewis*, 759 F.2d 1316, 1328 (8th Cir. 1985).

Under Federal Rule of Evidence 402, "[e]vidence which is not relevant is not admissible." Rule 401, in turn, defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. We have recognized that "[a] jury is entitled to know the circumstances and background of a criminal charge," and have permitted the introduction of evidence "providing the context in which the crime occurred, i.e. the *res gestae*." *United States v. Savage*, 863 F.2d 595, 599 (8th Cir. 1988) (internal quotation omitted).

-3-

In felon-in-possession cases, we have defined the scope of the *res gestae* to include the events immediately preceding the defendant's arrest, *see United States v. Tate*, 821 F.2d 1328, 1331 (8th Cir. 1987); *Carter v. United States*, 549 F.2d 77, 78 (8th Cir. 1977) (per curiam), as well as the circumstances of the arrest itself. *See Savage*, 863 F.2d at 599; *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984). Although *res gestae* evidence sometimes implicates the defendant in other acts, we have concluded that where acts are inextricably intertwined with the charged crime, they are not extrinsic, and thus not merely character evidence governed by Federal Rule of Evidence 404(b). *United States v. O'Dell*, 204 F.3d 829, 833 (8th Cir. 2000).

Applying these principles here, we conclude that the district court did not abuse its discretion in treating Hiegert's testimony about the report as relevant evidence. That the report concerned "shots fired" provided the jury with the proper context in which to understand Hiegert's actions. It helped to explain Hiegert's decision to leave his patrol car and pursue an unidentified man running across the street, and his decision to draw his service weapon. Without an understanding of the serious nature of the call to which Hiegert was responding, the jury could have been confused or misled by a seeming overreaction to a routine disturbance call. We therefore conclude that the district court reasonably allowed Hiegert's testimony as *res gestae* evidence.

LaDue maintains that even if the testimony was relevant, it should have been excluded under Federal Rule of Evidence 403, because its probative value was substantially outweighed by the danger of unfair prejudice. According to LaDue, the testimony left the jury with the impression that he had discharged a firearm in a residential neighborhood where children lived. This impression, LaDue contends, unfairly inflamed the jury and motivated it to convict him regardless of what the evidence showed.

We see no abuse of discretion under Rule 403. Indeed, LaDue's interpretation of the evidence actually presumes that the evidence carries a greater probative value

than simply explaining Hiegert's actions. Because LaDue did not object to the testimony on hearsay grounds, or seek a limiting instruction, the jury was free to consider the report of "shots fired" as evidence that shots recently had been fired in the neighborhood where LaDue was arrested. LaDue contends that the jury might even have inferred that he fired the shots. But if the evidence supports this inference, then it is highly probative. If LaDue fired a gun on the night in question, then it is more likely that he possessed the gun found at his feet, and less likely that his proximity to the gun was mere coincidence. We therefore conclude that the probative value of Hiegert's testimony was not substantially outweighed by any unfair prejudice.

LaDue next challenges the admission of Prosser's and Hiegert's testimony about LaDue's aggressive behavior at Prosser's home. LaDue contends that the evidence was neither probative of whether he possessed a firearm nor part of the *res gestae* of his arrest later that night. He asserts that the disturbance at Prosser's home and LaDue's subsequent arrest were "entirely unrelated," because the two events occurred almost an hour apart and a mile away from each other, and Hiegert realized only after making the arrest that LaDue was the same man who had caused the earlier disturbance. Even if the testimony was relevant, LaDue argues, it should have been excluded under Rule 403 because the unfair prejudice of evidence that he was an "angry and violent man" substantially outweighed its probative value.

Even assuming for the sake of argument that the district court abused its discretion in admitting this testimony, any error was harmless. An improper evidentiary ruling is a nonconstitutional error that must be disregarded under Federal Rule of Criminal Procedure 52(a), if it does not have a substantial influence on the verdict. *United States v. Lupino*, 301 F.3d 642, 645 (8th Cir. 2002); *United States v. DeAngelo*, 13 F.3d 1228, 1233 (8th Cir. 1994); *see Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946). Although the testimony of Prosser and Hiegert about the disturbance cast LaDue in a negative light, other testimony to the same effect was

properly before the jury. LaDue's violent and aggressive tendencies were also described by William Farris, a defense witness, who cited LaDue's increasingly belligerent behavior as the reason he ordered LaDue out of his car. LaDue suggests that he might not have called Farris to testify if the district court had excluded the testimony of Prosser and Hiegert, but in determining whether an error was harmless, we review "the trial record as a whole," *United States v. Hasting*, 461 U.S. 499, 509 (1983), without considering whether the presentation of evidence would have played out differently absent the error. *See United States v. Crawford*, 130 F.3d 1321, 1324 (8th Cir. 1997). Because the disputed testimony of Prosser and Hiegert was "to the same effect as other testimony properly before the jury," any error in admitting it was harmless. *United States v. White*, 11 F.3d 1446, 1451 (8th Cir. 1993).

Finally, LaDue argues that the evidence was insufficient to establish that he possessed a firearm. We may reverse a conviction for insufficiency of the evidence only if, viewing the evidence in the light most favorable to the verdict, no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003). In this case, the government presented evidence that LaDue ran from an approaching patrol car and hid from police on a private driveway. Shortly thereafter, LaDue was arrested, and police found a firearm at the location where he had been hiding. The owner of the property where LaDue was found disclaimed any knowledge of the firearm, and testified that the gun was not present the previous evening. A reasonable jury could find on this record that LaDue possessed the firearm.

The judgment of the district court is affirmed.

_____