# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3497
_____

Brad Lamont Williams

*Plaintiff - Appellee*

v.

City of Alexander, Arkansas

*Defendant*

Horace Walters, Individually and as Alexander Chief of Police

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: September 10, 2014
Filed: December 8, 2014
_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Brad Williams sued Horace Walters, the chief of police of Alexander, Arkansas, under 42 U.S.C. § 1983 and Arkansas law for arresting him without

-1-

probable cause. Walters appeals from the district court's[1] denial of his motion for qualified immunity. We affirm.

## I.

We state the facts in the light most favorable to Williams, the nonmoving party. Handt v. Lynch, 681 F.3d 939, 941 (8th Cir. 2012). Williams worked as a police officer for the City of Alexander ("the City") under Walters, the chief of police. There was bad blood between Williams and Walters, stemming from Williams's support of the mayor. In the summer of 2011, Walters told Williams that the mayor and his supporters were "a bunch of cock roaches [sic][.]" Walters further said that "the gloves [were] coming off[,]" that "he was an atomic bomb and he was going to destroy [Williams,]" and that he had Williams "in his cross hairs [sic]." A short time later, the mayor relieved Walters of duty. The city council held a meeting on the matter and decided to reinstate Walters. Williams testified against Walters at the reinstatement hearing, at which Walters was present. Thereafter, Walters tried to keep his contact with Williams and the mayor to a minimum because he "didn't want any problems."

In September 2011, the bookkeeper for the City discovered that Williams had cashed two payroll checks covering the same pay period. On September 3, 2010, Williams was issued a payroll check for $305.69, numbered 1977. He lost the check, so the City issued him another check for the same pay period, numbered 1986. Williams cashed check 1986 on September 8, 2010. Almost a year later, check 1977 resurfaced. Williams cashed it on August 9, 2011, without realizing that it was the check that he had reported lost and had had replaced. The bookkeeper for the City brought this error to Williams's attention at a city council meeting on September 19,

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

2011. The mayor found that Williams had made "an error that was not intentional[,]" and the city council agreed that as long as Williams repaid the money, the issue would be resolved. Two days later, Williams returned the money to the City. Walters was present at the city council meeting and was aware of the resolution of this matter.

In May 2011, Williams borrowed blue police lights from Tim Dudderar, a deputy sheriff for Saline County, Arkansas. These lights were Dudderar's personal property and were marked with his name. Williams informed Walters that he had borrowed the lights from Dudderar. In September 2011, Walters asked another officer to retrieve the blue lights from Williams and install them on Walters's patrol car. The officer did so. In November 2011, Dudderar retrieved the lights from Walters.

In February 2012, a magistrate judge issued a warrant for Williams's arrest, based on a sworn affidavit from Walters that stated the following:

> 1. On 9/22/11 I instructed officers to install blue lights on an unmarked APD vehicle. Officers were unable to locate two (2) blue lights that were secured in the APD storage area. These lights were visible in the secured area of the Alexander Police Department on 9/21/2011. You were called and asked the location of the blue lights. You told officers that they were in your personal vehicle at your home. You were never given permission to take possession of this property. This constitutes theft of property. (Misdemeanor)
>
> 2. On 9/3/2010 you were issued an Alexander police Department payroll check# 1977. This check was drawn on US Bank in the amount of $305.69. You stated on 9/3/10 you had misplaced or lost payroll check #1977.
>
> On 9/3/2010, the same day[] you were issued your original payroll check #1977, you were re-issued a replacement payroll check; the re-issued check number was check#1986. This check was also drawn on US Bank in the amount of $305.69.

On 8/9/2011, you cashed the original first issued payroll check # 1977 in the amount of $305.69 at Hess Convenient Store located at 13325 First Street in Alexander Arkansas. Your written statement to me indicated "I honestly didn't know I had even lost check# 1977." This action constitutes Theft of Property.

Walters claims that the blue lights he instructed the officer to retrieve from Williams and install on his vehicle belonged to the City and had been located in the storage area; these lights were different from the lights that belonged to Dudderar. Walters further claims that when the officer was unable to locate these lights, the officer spoke with Williams, who stated that the blue lights were in his personal vehicle. Walters based this claim on a memo from the officer. The officer denies writing the memo and does not remember signing it. Furthermore, the officer stated that the blue lights that Walters asked him to install belonged to Dudderar, not to the City, and were located in Williams's patrol car, not his personal vehicle. Williams had permission from Dudderar to use these lights.

Williams was arrested on misdemeanor charges of theft and spent a day in jail. The prosecuting attorney dismissed the charges, following which Williams brought this suit against Walters and the City under § 1983, alleging violations of his Fourth and First Amendment rights, as well as violations of state law. The district court dismissed the claims against the City, but denied summary judgment and qualified immunity for Walters. Walters appeals.

II.

A district court's decision denying summary judgment based on qualified immunity can be appealed immediately, even though it is interlocutory. Walden v. Carmack, 156 F.3d 861, 868 (8th Cir. 1998) (citing Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). We review the denial of a motion for summary judgment and the legal

issues related to qualified immunity *de novo*. Id. Qualified immunity protects government officials sued in their individual capacities from civil liability unless "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)).

## A.

The Fourth Amendment right to be free from unreasonable searches and seizures requires that arrests be based on probable cause. Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999). Similarly, "'[l]ack of probable cause is a necessary element of' a First Amendment retaliatory arrest claim." Galarnyk v. Fraser, 687 F.3d 1070, 1076 (8th Cir. 2012) (alteration in original) (quoting McCabe v. Parker, 608 F.3d 1068, 1075 (8th Cir. 2010)). The parties dispute on appeal only whether, viewing the facts in the light most favorable to Williams, probable cause existed.

## 1.

"Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense.'" Flynn v. Brown, 395 F.3d 842, 844 (8th Cir. 2005) (quoting Hannah v. City of Overland, 795 F.2d 1385, 1389 (8th Cir. 1986)). "Whe[n] the alleged constitutional violation involves an arrest pursuant to a warrant, 'the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]'" Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013) (second alteration in original) (quoting Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012)). But when a police officer deliberately or

recklessly makes false statements to demonstrate probable cause for an arrest warrant, the warrant may be invalidated under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978). <u>Hawkins v. Gage Cnty., Neb.</u>, 759 F.3d 951, 958 (8th Cir. 2014). To establish a <u>Franks</u> violation, the plaintiff must prove "1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to provide probable cause." <u>United States v. Box</u>, 193 F.3d 1032, 1034-35 (8th Cir. 1999) (quoting <u>United States v. Humphreys</u>, 982 F.2d 254, 259 n.2 (8th Cir. 1992)).

We must first determine whether the facts viewed in the light most favorable to Williams could establish that Walters intentionally and knowingly, or with reckless disregard to the truth, included a false statement in the affidavit. Walters swore in the affidavit that Williams "told officers" that the blue lights were in his personal vehicle at his house. Walters claims that Williams made this statement to an officer and that it was recorded in the officer's memo. The officer has denied writing the memo and does not remember signing it. Furthermore, Walters and Williams were at odds with each other; Walters claims that Williams had said that he would "destroy" Williams. A reasonable jury could find that Walters fabricated the officer's memo and intentionally included a false statement in the affidavit to make good on his promise to "destroy" Williams.

Walters also swore in the affidavit that Williams did not have permission to use the blue lights. The officer who retrieved the blue lights from Williams stated that Walters had asked him to find Dudderar's blue lights, not the blue lights belonging to the City. Williams had permission to use Dudderar's blue lights, and Williams claims that Walters knew this. Accordingly, a reasonable jury could find that Williams has established the first step of a <u>Franks</u> violation: that Walters knew that the lights in Williams's possession belonged to Dudderar and that Williams had permission to use them, but deliberately stated falsely in the affidavit that Williams did not have permission to do so.

-6-

Once the purportedly false statements are removed, the affidavit's remaining content does not support a finding of probable cause.[2] After removing the statement that Williams did not have permission to take possession of the property and the statement that Williams said the blue lights were in his personal vehicle at his home, this is what remains of the affidavit supporting theft of the blue lights:

> On 9/22/11 I instructed officers to install blue lights on an unmarked APD vehicle. Officers were unable to locate two (2) blue lights that were secured in the APD storage area. These lights were visible in the secured area of the Alexander Police Department on 9/21/2011. [Williams] w[as] called and asked the location of the blue lights. . . . This constitutes theft of property.

As so corrected, the affidavit does not establish probable cause that Williams committed theft of the City's blue lights. Accordingly, when the facts are viewed in the light most favorable to Williams, a reasonable jury could find that Walters violated Williams's constitutional rights when he caused Williams to be arrested for theft of the blue lights.

2.

Both parties agree that the facts in the affidavit to support the allegation of theft based on the check-cashing incident contain no falsehoods. But Walters omitted several facts. Under Franks, Williams can challenge the affidavit based on the omission of facts by proving "1) that facts were omitted with the intent to make, or

---

[2]In Bagby v. Brondhaver, 98 F.3d 1096, 1099 n.2 (8th Cir. 1996), we left open the issue "whether a defendant whose affidavit contained a deliberate falsehood should be entitled to qualified immunity if a corrected affidavit would still provide probable cause[,]" recognizing that "[a] more stringent rule may be appropriate when a liar seeks the benefit of this defense." As the corrected affidavit here does not provide probable cause, we need not address this issue.

in reckless disregard of whether they thereby make, the affidavit misleading, and 2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." Box, 193 F.3d at 1035 (quoting Humphreys, 982 F.2d at 259 n.2). See also United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986).

The affidavit failed to state that the mayor and the city council had resolved the check-cashing issue and that the mayor had found that Williams did not intend to take money from the City that did not belong to him. Walters also failed to mention that when the matter was brought to Williams's attention, he repaid the money within two days. There is evidence that Walters was aware of this information and that he chose to omit it from the affidavit. A reasonable jury could find that because Walters and Williams did not get along and Walters had told Williams that he would "destroy" him, Walters intentionally omitted these facts to make the affidavit misleading.

We must then determine whether the affidavit, when supplemented by the omitted information, supports a finding of probable cause for theft based on cashing the check. See Reivich, 793 F.2d at 961. For probable cause to exist, there must be probable cause for all elements of the crime, including *mens rea*. See Kuehl v. Burtis, 173 F.3d 646, 651 (8th Cir. 1999) (holding that an officer who ignored exculpatory evidence that negated the *mens rea* required for assault was not entitled to qualified immunity for arrest without probable cause). Under Arkansas law:

> A person commits theft of property if he or she knowingly . . . [t]akes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property[.]

Ark. Code Ann. § 5-36-103(a)(1).

We conclude that when reconstructed to contain the omitted facts, the affidavit does not establish probable cause that Williams purposefully deprived the City of its

property. Williams cashed a payroll check that was made out to him and in the same amount as the City regularly paid him. He explained that he had not realized that this was the check that he had reported lost and that had been replaced almost a year earlier. When it was brought to his attention that he had received money that did not belong to him, he repaid the money within two days. The mayor believed that Williams had made an honest mistake, and the city council agreed that the issue was resolved. Taken together, these facts demonstrate that there was not probable cause to believe that Williams had purposefully deprived the City of its property as required under the Arkansas theft statute. Accordingly, a reasonable jury could find that Williams's constitutional rights were violated when he was arrested for theft based on his cashing the check.

B.

Williams's constitutional rights are clearly established if, on these particular facts, a "reasonable official would understand that what he is doing violates [Williams's] right[s]." Good v. Olk-Long, 71 F.3d 314, 315 (8th Cir. 1995) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The facts viewed in the light most favorable to Williams establish that Walters purposefully lied and omitted information from the affidavit so that he could have Williams arrested and thereby exact revenge on Williams for supporting the mayor. "The Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established." Kuehl, 173 F.3d at 649. Furthermore, it is "clearly established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause" in a sworn affidavit. Burk v. Beene, 948 F.2d 489, 494 (8th Cir. 1991). It is also clearly established that a citizen has a right "to exercise First Amendment freedoms 'without facing retaliation from government officials[.]'" Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010) (quoting Kilpatrick v. King, 499 F.3d 759, 767 (8th Cir. 2007)). Because a reasonable official would understand that including false information in and omitting relevant information from an affidavit in an effort to punish someone for supporting one's political opponent would constitute

a violation of clearly established constitutional rights, Walters is not entitled to qualified immunity.

III.

Walters also appeals the district court's denial of summary judgment on Williams's state-law claims of malicious prosecution, abuse of process, defamation, and outrage. Our jurisdiction in an interlocutory appeal is limited to reviewing the issue of qualified immunity, and we do not have jurisdiction over state-law claims unless they are "inextricably intertwined" with the qualified-immunity determination. Small v. McCrystal, 708 F.3d 997, 1010 (8th Cir. 2013). "An issue is 'inextricably intertwined' with properly presented issues only 'when the appellate resolution of the collateral appeal necessarily resolves the pendent claims as well.'" Lockridge v. Bd. of Trs. of Univ. of Ark., 315 F.3d 1005, 1012 (8th Cir. 2003) (en banc) (quoting Kincade v. City of Blue Springs, 64 F.3d 389, 394 (8th Cir. 1995)). Because each of the state-law claims contains elements that we need not evaluate to resolve the qualified-immunity issue, they are not "inextricably intertwined" with the qualified-immunity determination, and thus we lack jurisdiction over them.

IV.

We affirm the district court's denial of qualified immunity, and we dismiss for lack of jurisdiction the attempted appeal of the denial of summary judgment on Walters's state-law claims.

_____