# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1014

_____

United States of America

*Plaintiff - Appellee*

v.

Ronald Donte Finley, Jr.

*Defendant - Appellant*

_____

No. 22-1052

_____

United States of America

*Plaintiff - Appellee*

v.

Jarvae Josiah Somerville

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 19, 2022
Filed: January 9, 2023
_____

Before SMITH, Chief Judge, BENTON and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Ronald Donte Finley, Jr., and Jarvae Josiah Somerville (together, Appellants) were each convicted of unlawfully possessing a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Appellants challenge their convictions, arguing that the district court erred by denying their motions to suppress the firearms because law enforcement discovered the firearms as a result of unlawful arrests. Somerville also appeals the admission of certain testimony at trial and the district court's decision to withhold juror questionnaires that were completed as part of voir dire. Having jurisdiction under 28 U.S.C. § 1291, we affirm Finley's conviction and remand Somerville's case to the district court for the limited purpose of making the completed questionnaires available to the parties and determining whether juror bias prejudiced Somerville.

I.

Minneapolis law enforcement issued a "probable cause pickup" (PC pickup)[1] for Finley and Somerville in connection with a May 2020 drive-by shooting. In July 2020, law enforcement surveilled Appellants going to a south Minneapolis restaurant. Law enforcement witnessed Finley and Somerville exit the restaurant; Finley entered the passenger side of a vehicle while Somerville returned to the restaurant. Law enforcement decided to arrest Appellants based on the PC pickup. Law enforcement surrounded the vehicle with weapons drawn. The officers wore plain clothes and black tactical vests that displayed a badge on the chest and "Police"

_____

[1]A PC pickup "is not the same as a 'charging warrant.' It is a document prepared by law enforcement that directs officers who encounter the subject to arrest [him or her]. It is neither signed by a judge nor a prosecutor." R. Doc. 91, at 4 (citation omitted).

on the front and back.  An officer opened the driver-side door and ordered Finley to put his hands up.  Startled by the interaction, Finley exited the passenger-side door and fled.  Law enforcement continued to order Finley to put his hands up and to get on the ground.  Officers quickly apprehended Finley and subsequently recovered a firearm from the passenger side of the vehicle.

Meanwhile, a separate team of law enforcement approached Somerville inside the restaurant.  Officers were dressed similarly to those outside of the restaurant but uttered no commands when approaching Somerville.  Somerville fled from law enforcement through the kitchen and into a restroom.  Officers forced their way into the restroom and struggled with Somerville.  During the skirmish, one officer exclaimed that Somerville was reaching for his waistband and felt a gun on his person.  Somerville was eventually subdued and apprehended.  Law enforcement discovered a firearm in the restroom.  A subsequent search of Somerville's apartment produced ammunition matching the firearm.

Both Finley and Somerville were charged with unlawful possession of a firearm.  Appellants each filed a motion to suppress the firearms found incident to their respective arrests, challenging the probable cause supporting their arrests.  Specifically, Appellants argued that the PC pickups did not provide law enforcement with probable cause to arrest them.  While the Government argued that the PC pickups (and the underlying facts of the May 2020 drive-by shooting) supported probable cause, it alternatively argued that Appellants' respective flights provided law enforcement with independent probable cause for arrest under Minn. Stat. § 609.487, subdiv. 6, which states:

> Whoever, for the purpose of avoiding arrest, detention, or investigation . . . attempts to evade or elude a peace officer, who is acting in the lawful discharge of an official duty, by means of running, hiding, or by any other means except fleeing in a motor vehicle, is guilty of a misdemeanor.

Appellants contested the Government's alternative theory, both arguing that they could not have fled from arrest because they were not aware that they were being approached by law enforcement. Appellants also argued that they had been unlawfully seized prior to fleeing pursuant to law enforcement's execution of the PC pickups. Somerville additionally argued that his flight was not sufficiently attenuated from the execution of the PC pickup such that it was "purged" of the taint of the unlawful execution. He also argues that that he had a right to flee from the allegedly unlawful arrest.

The district court, adopting the report and recommendation of the magistrate judge, found that the PC pickups were not warrants and that the factual basis supporting Appellants' PC pickups was otherwise insufficient to establish probable cause for their arrests. However, the district court agreed with the Government that Appellants' respective flights from arrest gave law enforcement an independent basis to arrest them. It rejected Appellants' arguments to the contrary, noting that Appellants' recognition of law enforcement was irrelevant because the probable-cause test is analyzed from the objective point of view of the arresting officer. It also found that Appellants were not seized during the initial execution of the PC pickups because neither Appellant submitted to law enforcement's show of authority. The district court found that the attenuation doctrine did not apply to Somerville's arrest and that even if it did, his flight constituted an "intervening circumstance" sufficient to purge any prior unlawful act. Finally, the district court found that Somerville did not have a right to flee law enforcement's execution of the PC pickup. Accordingly, it denied Appellants' motions to suppress.

Prior to trial, the Government filed a motion in limine, seeking to admit evidence of the May 2020 drive-by shooting investigation and the PC pickups for the purpose of contextualizing Appellants' arrests. As relevant to this appeal, Somerville opposed the Government's motion, arguing that the evidence was irrelevant and that its probative value was substantially outweighed by its prejudicial effect, in violation of Federal Rules of Evidence 402 and 403, respectively. The

district court granted the Government's motion, stating that the evidence was necessary to provide context and that a limiting instruction would be given.

Moving forward to trial, the district court discussed the matter of voir dire with the parties, specifically as to how the process might require modification in light of the COVID-19 pandemic. The district court determined that it would use "jury questionnaires" that would be sent out to prospective jurors before formal voir dire. In the district court's view, "a jury questionnaire is a good thing to have [during the COVID-19 pandemic], because it becomes helpful to [the parties], it becomes helpful to everybody . . . in the matter, including what can lead to some very obvious cause strikes." The district court provided the parties with its proposed questionnaire and allowed the parties to propose changes to the questions, some of which were adopted.

The questionnaires were sent to the pool of prospective jurors and at least a portion of the pool returned responses. However, the district court declined to release the completed questionnaires to the parties and informed the parties that voir dire would instead be in court and oral. Believing that jurors might be more forthcoming in written answers than in in-court statements, Appellants nonetheless moved the district court to release the completed questionnaires for the parties to review or, in the alternative, to hold the same under seal for purposes of challenging the decision on appeal. The district court denied the motion in part, stating:

> I believe that the oral inquiry and the responses that we will get from jurors as they are called will be more appropriate and will be appropriate, where I'm afraid that inadvertently there may have been some what I call inadvertent comments, they were gratuitous comments, made that are not appropriate for any courtroom and the result is that it is appropriate for the [district court] just to keep them under seal.

R. Doc. 187, at 4-5. Then, the district court continued by conducting oral voir dire. The district court exclusively conducted voir dire but allowed the parties to submit

questions throughout the process. The district court posed all of the questions submitted by the parties.

A jury was empaneled, and trial ensued. The jury convicted both Appellants. Appellants appeal their convictions. Both challenge the denial of their motions to suppress the firearms, arguing that law enforcement discovered the firearms incident to unlawful arrests. Somerville also challenges the Government's references to the May 2020 drive-by shooting investigation at trial and the district court's decision to withhold the completed questionnaires from the parties. We address each Appellant's arguments in turn.

II.

On appeal, Finley argues only that the district court erred in denying his motion to suppress the firearm found incident to his arrest because law enforcement lacked probable cause to arrest him based on Minn. Stat. § 609.487, subdiv. 6.[2] Specifically, he argues that a reasonable person would not be justified in concluding that he intended to avoid arrest by fleeing because he was unaware that the arresting officers were in fact law enforcement. "We review the denial of [a] motion to suppress under a mixed standard of review. 'We review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to *de novo* review.'" United States v. Holly, 983 F.3d 361, 363 (8th Cir. 2020) (citations omitted). Under the clearly erroneous standard, we will reverse a finding of fact only "if, despite evidence supporting the finding, the evidence as a whole leaves us with a definite and firm conviction that the finding is a mistake." Id. (citation omitted).

---

[2]The Government does not challenge the district court's finding that the PC pickups were not warrants or that law enforcement otherwise lacked probable cause based on the PC pickups. Neither Appellant challenges the district court's finding that they were not seized prior to being physically detained by law enforcement.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." Royster v. Nichols, 698 F.3d 681, 687-88 (8th Cir. 2012) (citation omitted). "Probable cause exists 'when the totality of the circumstances at the time of the arrest "[is] sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense."'" Brown v. City of St. Louis, 40 F.4th 895, 900 (8th Cir. 2022) (citation omitted); see also Bell v. Neukirch, 979 F.3d 594, 603 (8th Cir. 2020) ("There must be a 'fair probability' or a 'substantial chance' that the person seized has committed an offense." (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13, 246 (1983)). Importantly, the existence of probable cause "is determined from 'the standpoint of an objectively reasonable police officer,'" not the defendant. Walz v. Randall, 2 F.4th 1091, 1100 (8th Cir. 2021) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018)). Because the statute here—Minn. Stat. § 609.487, subdiv. 6—is a specific-intent crime, an officer must have probable cause that the individual committed the "prohibited physical act [i.e., fleeing] with a specific intention to avoid arrest, detention, or investigation." State v. Wilson, 830 N.W.2d 849, 854 (Minn. 2013); see also Williams v. City of Alexander, 772 F.3d 1307, 1312 (8th Cir. 2014) ("For probable cause to exist, there must be probable cause for all elements of the crime, including *mens rea*."). Because an officer cannot be certain of a suspect's mens rea at the time he or she commits the crime, "[a]n officer can rely on 'the implications of the information known to him' when assessing whether a suspect possessed the state of mind required for the crime." Borgman v. Kedley, 646 F.3d 518, 524 (8th Cir. 2011) (citation omitted).

Here, Finley argues that the officers could not have reasonably believed that Finley fled with the specific intent of avoiding arrest because no objective officer could have believed that Finley was aware that the officers were in fact law enforcement. In support of his argument, he notes that the officers were wearing plain clothes, that none of the officers announced that they were law enforcement or that Finley was under arrest, and that the officers obscured the "Police" labels on their tactical vests with their raised firearms. His fleeing, Finley argues, was not in

response to seeing law enforcement but rather a reasonable reaction to suddenly seeing a firearm pointed at his face.

Even so, Finley's "perception of the officers is not relevant because we draw our conclusion from the facts known to the arresting officer at the time of the arrest." United States v. Flores-Lagonas, 993 F.3d 550, 561 (8th Cir. 2021). It is unclear whether law enforcement was cognizant of how much of their vests were observable to Finley, but they nonetheless knew that they were wearing black tactical vests with the "Police" label and with badges prominently displayed. Though law enforcement did not identify themselves as such or announce that Finley was under arrest, they did issue what the district court described as "quintessential law enforcement orders that accompany arrest," i.e., for Finley to put his hands up and to get on the ground. In response to these repeated commands, Finley fled. Even *if* Finley thought that he was fleeing an unprompted attack, the totality of the circumstances—that the interaction occurred during the day in a public area, that law enforcement wore the tactical vests with "Police" and badges displayed, and that law enforcement repeatedly issued commands consistent with arrest—was sufficient to lead a reasonable officer to believe that Finley was fleeing with an intent of avoiding arrest in violation of Minnesota law. Accordingly, we find that the district court correctly denied Finley's motion to suppress and refuse to otherwise disturb his conviction.

### III.

On appeal, Somerville challenges (1) the denial of his motion to suppress the firearm discovered incident to his arrest, (2) the grant of the Government's motion in limine to admit references to the May 2020 drive-by shooting investigation at trial, and (3) the district court's decision to withhold the completed questionnaires from the parties.

## A.

First, Somerville challenges the district court's denial of his motion to suppress. As above, we review the district court's factual findings for clear error and the ultimate question of whether Somerville's Fourth Amendment rights were violated de novo. Holly, 983 F.3d at 363. Somerville argues that discovery of the firearm is "fruit of the poisonous tree" and must accordingly be suppressed. See Utah v. Strieff, 579 U.S. 232, 237 (2016) (citation omitted). Of course, for there to be "fruit," there must first be a "poisonous tree," that is, "an illegal search or seizure" or "an illegality." Id. (citation omitted); see also California v. Hodari D., 499 U.S. 621, 629 (1991) (holding that evidence abandoned during flight was not fruit of the poisonous tree because defendant was not seized until after brief foot chase). Somerville contends that the requisite illegality was law enforcement's execution of the PC pickup, which the district found to be insufficient to establish probable cause for his arrest. However, an attempted arrest alone, even if unsupported by probable cause, is insufficient to invoke Fourth Amendment protections against unreasonable seizures. See Hodari D., 499 U.S. at 626 ("The word 'seizure' . . . does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee."). Instead, the Fourth Amendment protection against unlawful seizures attaches only when there is either "physical force," or, as relevant here, "submission to the assertion of authority." Id. (emphasis omitted).

Here, the district court found that Somerville was never seized during law enforcement's execution of the PC pickup because he did not "submi[t] to the[ir] assertion of authority," a finding that Somerville does not meaningfully challenge in this appeal. See id. (emphasis omitted). Instead, law enforcement seized Somerville only *after* he fled into the restroom, at which point they had probable cause to arrest him under Minn. Stat. § 609.487, subdiv. 6. Unlike Finley, Somerville does not challenge this probable-cause finding. Given that there was no illegal seizure, the discovery of the firearm was not fruit of the poisonous tree. Accordingly, we affirm the district court's denial of Somerville's motion to suppress.

B.

Somerville next challenges the district court's grant of the Government's motion in limine and admission of references to the May 2020 drive-by shooting investigation and Somerville's related PC pickup. "We review a district court's evidentiary rulings, including its decision to [grant] a motion *in limine*, for abuse of discretion." United States v. Banks, 43 F.4th 912, 917 (8th Cir. 2022). Specifically, Somerville argues that the testimony concerning the May 2020 drive-by shooting investigation should have been excluded under Federal Rules of Evidence 402 and 403 because it was irrelevant to his felon-in-possession charge and unfairly prejudicial, respectively.

Under Federal Rule of Evidence 402, evidence that is not relevant—that is, having "any tendency to make" the existence of any fact that is of consequence to the determination of the action "more or less probable than it would be without the evidence," see Fed. R. Evid. 401—is not admissible. "We have recognized that '[a] jury is entitled to know the circumstances and background of a criminal charge,' and have permitted the introduction of evidence 'providing the context in which the crime occurred, i.e., the *res gestae*.'" United States v. LaDue, 561 F.3d 855, 857 (8th Cir. 2009) (alteration in original) (citation omitted). Accordingly, testimony regarding the ongoing May 2020 drive-by shooting investigation and Somerville's related PC pickup was relevant for the purposes of contextualizing why law enforcement sought to arrest Somerville in the first place.

Nonetheless, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Somerville argues that evidence of the shooting unfairly misled the jury by suggesting that Somerville was the shooter and that he possessed a gun on a prior occasion. But the Government made only a passing reference to the shooting investigation to explain why law

enforcement went to arrest Somerville. In doing so, the Government did not disclose any details about the shooting or the investigation.

Even assuming that the district court abused its discretion in admitting the evidence, such error was harmless. "An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." United States v. Red Legs, 28 F.4th 931, 935 (8th Cir. 2022) (citation omitted). Somerville fails to sufficiently explain how this evidence had "a substantial influence on the verdict." LaDue, 561 F.3d at 859 (reviewing the admission of evidence under the harmless error standard). While Somerville argues that he was unable to cross-examine the witness, he asked at least one question of the witness who testified as to the investigation without objection from the Government or the district court. Furthermore, Somerville, not the Government, referenced the shooting investigation in closing and utilized it *as a defense*. Finally, we will not reverse for improperly admitted testimony when, as here, the record contains "overwhelming evidence" supporting the conviction absent the testimony. See Red Legs, 28 F.4th at 935-36. Law enforcement testified to their struggle with Somerville, feeling the firearm in his waistband, retrieving the firearm from the bathroom floor after the struggle, and recovering ammunition from Somerville's apartment that matched the firearm. Accordingly, we find any error committed in admitting the testimony of the May 2020 drive-by shooting investigation was harmless and does not warrant reversal. See id.

C.

Finally, Somerville challenges the district court's decision to withhold the completed juror questionnaires. "We review 'whether the district judge conducted voir dire in a way that protected a defendant's Sixth Amendment right . . . [for] an abuse of discretion.'" United States v. Young, 6 F.4th 804, 807-08 (8th Cir. 2021) (alterations in original) (citation omitted). "The district court abuses its discretion when the overall examination of the prospective jurors and the charge to the jury

fails to protect the defendant from prejudice or fails to allow the defense to intelligently use its peremptory challenges." Id. (citation omitted).

Here, Somerville argues that the district court conducted voir dire in a way that violated his Sixth Amendment right to a fair and impartial jury by withholding the completed juror questionnaires. Somerville contends that prospective jurors were more likely to provide honest answers in writing as opposed to orally in open court. With no case law directly on point, this rather unique circumstance presents this Court with an issue of first impression. Despite attacking the district court's withholding of the completed questionnaires, the heart of Somerville's argument is that jurors may have concealed biases in oral voir dire that they may have otherwise disclosed in their responses to the written questionnaires. Accordingly, we deem jurisprudence regarding jurors who conceal bias during voir dire as the best parallel to the issue at bar. See, e.g., United States v. Tucker, 137 F.3d 1016, 1026-29 (8th Cir. 1998) (ordering further proceedings when defendant discovered after trial that juror had connections to a family member who had strong biases against defendant). To succeed on such a concealed bias claim, Somerville must prove (1) that a juror answered dishonestly, not just inaccurately, (2) that such dishonest answers, if any, were motivated by partiality, and (3) that the true facts, if known, would have supported striking the juror for cause. See id. at 1026 (citing McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984)).

However, we are a court of review, and the lack of information on the record as to the questionnaire answers exacerbates our already difficult task of reviewing the adequacy of voir dire. Young, 6 F.4th at 807. Here, the completed questionnaires are not a part of the record, nor have the parties been granted the opportunity to review their contents. Thus, the parties have not been able to make specific challenges based on the jurors' answers or engage in adversarial proceedings before the district court. Accordingly, we are simply blind to the impact, if any, these questionnaires may have had on the jury pool. That said, we find troubling the district court's comment that the responses to the questionnaires were filled with "inadvertent[,] . . . gratuitous comments . . . that are not appropriate

-12-

for any courtroom." This bolsters Somerville's argument that the jurors may have been more candid in their written responses than in open court.

While "[t]he district court has broad discretion in handling allegations that jurors have not answered voir dire questions honestly, . . . [t]hat discretion is not unlimited." Tucker, 137 F.3d at 1026. "[A] movant who makes a sufficient showing of McDonough-type irregularities"—that a juror may have answered voir dire questions dishonestly to conceal bias—"is entitled to the court's help in getting to the bottom of the matter." Id. Still, we are hesitant to take any drastic steps, such as reversing Somerville's conviction, based on an incomplete record. See id. at 1027, 1029 (refusing to reverse defendant's conviction based on concealed bias when the record was "woefully incomplete" and defendant's arguments were supported only by circumstantial evidence). Instead, we find that Somerville has cited enough evidence "to entitle him to a hearing and findings of fact on this issue." See id. at 1027. Specifically, the district court's troubling description of the comments warrants disclosure of the completed questionnaires to the parties. After disclosing the answers, the district court shall proceed with any steps it deems necessary to determine whether any bias impacted Somerville's conviction, which may include holding an adversarial hearing to engage in a fact-intensive analysis. See Kelly as Tr. of PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd., 31 F.4th 1058, 1068 (8th Cir. 2022) (remanding when it was beneficial for the district court to conduct a fact-intensive analysis in the first instance).[3]

---

[3]We note that Finley did not raise, and thus waived, this issue on appeal. Mahler v. First Dakota Title Ltd. P'ship, 931 F.3d 799, 807 (8th Cir. 2019) (finding an issue waived under Rule 4 of the Federal Rules of Appellate Procedure when appellant failed to include the issue in the statement of issues and discussed it only briefly in the briefing). Accordingly, our instructions to the district court on this matter concern Somerville's case only.

## IV.

For the foregoing reasons, we affirm the judgment of the district court with respect to Finley. With regard to Somerville, we remand the case to the district court for the limited purpose of disclosing the completed questionnaires to him and the Government and taking any steps it deems necessary to determine whether concealed jury bias prejudiced Somerville, including, for example, holding a McDonough hearing, see Tucker, 137 F.3d at 1026-29. The district court is ordered to disclose the completed questionnaires no later than 14 days from the filing of this opinion and enter a supplemental order addressing the matter discussed herein in due course. We retain jurisdiction over the appeal during this limited remand. Once the district court's supplemental order is entered, the clerk is directed to return the case to this panel for disposition of Somerville's appeal.

_____