# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3073

_____

Lee Van Brown, Originally named as Levan Brown

*Plaintiff - Appellant*

v.

City of Dermott Arkansas; Cobe Heard, Individually; Eric Evans, In his individual
and official capacity as Chief of Police for the City of Dermott

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Delta

_____

Submitted: April 16, 2025
Filed: August 20, 2025

_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Lee Van Brown claims he was forced to resign from his job at the Dermott, Arkansas Police Department in retaliation for reporting then-Officer Coby Heard's use of excessive force. Brown sued Police Chief Eric Evans, Officer Heard, and the City of Dermott, alleging federal claims under 42 U.S.C. § 1983 for violations of his

First and Fourth Amendment rights and various state law claims. The district court[1] granted the defendants' motion for summary judgment. We affirm.

## I.

Heard grabbed an arrestee by the neck in November 2019 while he was chained to a pole at the police department. Brown saw it but another officer reported it to Evans. The Dermott mayor and the city council learned of the incident, though it is disputed how.

A month later, Heard told Evans that Brown took money from a parolee and did not turn it in to the police department. Heard also claimed that Brown tried to give him some of the money and that he overheard a phone conversation where Brown told his brother and supervisor, Sergeant Lee Edward Brown, that he had taken more than $300 from the parolee. Brown testified that Heard was the one who took $150 from the parolee, but the parolee filed a statement that it was Brown. In early January 2020, Evans referred the incident to a local prosecutor, who referred it to the Arkansas State Police for investigation.

On January 31, 2020, Brown called Sergeant Brown and said that he could not come to work because he was sick. Despite Sergeant Brown's lack of authority to do so, he said that Brown was fired for being a "no-call, no-show." Neither Evans nor anyone else from the department ever told Brown that he was fired, and Evans testified that a police officer cannot be fired without approval of the mayor and city council. Brown testified that the mayor told him Evans could not fire Brown, but that Brown could resign.

The Lake Village, Arkansas Police Department hired Brown and gave him a start date in mid-February. But on February 4, Lake Village rescinded the offer and

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

told Brown that they would not hire him because of the state police investigation. Brown resigned from the Dermott Police Department without explanation the next day. The investigation also prevented Brown from receiving a job offer from the Eudora, Arkansas Police Department.

Brown was charged with abuse of office and witness bribery in March 2021. He was not arrested but was summoned to appear in court. The case was eventually dismissed because the prosecutor could not locate the parolee.

## II. Federal Claims

We review the district court's grant of summary judgment *de novo*. *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant," *id.*, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

## A. First Amendment

Brown argues that he was fired in retaliation for exercising his First Amendment rights by reporting Heard's excessive use of force and sexual harassment.[2] "To establish a prima facie case of retaliation, a plaintiff must allege and prove that," as relevant here, "the defendant took an adverse employment action against [him]." *Davison v. City of Minneapolis*, 490 F.3d 648, 654–55 (8th Cir. 2007) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). Brown claims that his "employment was terminated by Appellees, and that obviously constitutes an adverse employment action." But he admits that he resigned from the Dermott Police Department. There is no claim of constructive discharge, *see*

---

[2]Because Brown failed to explain in his brief how the district court erred by granting summary judgment on the sexual harassment-related retaliation claim, we will not consider the claim on appeal. *Rotskoff v. Cooley*, 438 F.3d 852, 854 (8th Cir. 2006).

*Wagner v. Campbell*, 779 F.3d 761, 766 n.4 (8th Cir. 2015), and a voluntary resignation is not an adverse employment action, *see Fenney v. Dakota, Minn. & E.R.R. Co.*, 327 F.3d 707, 717 (8th Cir. 2003) (except for circumstances that give rise to a constructive discharge, "a plaintiff cannot state an adverse employment action if he voluntarily resigned"). Brown also argues a cat's paw theory of liability—in other words, the technical decisionmaker (the mayor) was motivated by the discriminatory animus of another (Heard or Evans). But that still requires an adverse employment action. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 418 (2011).

## B. Fourth Amendment

Brown also claims that Evans and Heard violated his Fourth Amendment right to be free from malicious prosecution, which requires "the wrongful initiation of charges without probable cause." *Thompson v. Clark*, 596 U.S. 36, 43 (2022). "Because this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff." *Id.* at 43 n.2. So for a pretrial restraint on liberty to be actionable under the Fourth Amendment, there must be "either 'physical force,' or, as relevant here, 'submission to the assertion of authority.'" *United States v. Finley*, 56 F.4th 1159, 1166 (8th Cir. 2023) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)); *see also Manuel v. Joliet*, 580 U.S. 357, 365–366 (2017).

Brown has not shown that he was seized within the meaning of the Fourth Amendment. Although Brown claims that the summons required him to submit to the state's assertion of authority, "[n]o court has held that a summons alone constitutes a seizure." *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008); *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010); *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005); *Britton v. Maloney*, 196 F.3d 24, 29–30 (1st Cir. 1999); *see also Becker v. Kroll*, 494 F.3d 904, 914–16 (10th Cir. 2007) (no seizure when plaintiff subject to subpoena of records, threats of criminal prosecution if she did not pay settlement); *Martinez v. Carr*, 479 F. 3d 1292, 1295–96 (10th Cir. 2007) (Gorsuch, J.) (no seizure when suspect given a citation and told he could either sign

the citation or be arrested); *Kingsland v. City of Miami*, 382 F.3d 1220, 1235–36 (11th Cir. 2004) (no seizure when plaintiff required to post bond, appear at arraignment, and travel out-of-state to attend court).[3]

Brown maintains that a summons "certainly restricts a criminal defendant's freedom of movement, since failure to appear in court is a crime and will likely result in the court issuing a warrant for the defendant's arrest." Even if Brown's summons stated that he would be arrested if he failed to appear in court at a certain date and time, "such an arrest might well constitute a new and qualitatively different seizure, but that is not our case and a question we need not face, as nothing of the sort took place here." *Martinez*, 479 F.3d at 1296 (internal citation omitted).[4]

---

[3]Some courts have concluded that pre-trial proceedings can rise to the level of Fourth Amendment seizures if the court places pretrial restrictions on the plaintiff's liberty. *See Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (plaintiff seized under the Fourth Amendment where subject to more severe pre-trial restrictions for eight months before acquittal, such as being prohibited from leaving New Jersey or Pennsylvania and required to contact pre-trial weekly); *Evans v. Ball*, 168 F.3d 856, 860–1 (5th Cir. 1999) (plaintiff seized under the Fourth Amendment where summoned to court and subject to pretrial restrictions including travel restrictions and monthly reporting requirement to pretrial services, but constitutional violation not clearly established), abrogated on other grounds by *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). Brown has not alleged any pretrial restriction, and even if he had, they were not imposed by Evans or Heard. *See Bielanski*, 550 F.3d at 642–43.

[4]Brown points to our decision in *Stewart v. Wagner*, 836 F.3d 978 (8th Cir. 2016), in support of his claim, but there we did not analyze whether the plaintiff was seized—we held only that the defendant's claim for malicious prosecution "must be judged" under the Fourth Amendment, not the Fourteenth. *Id.* at 983–84. He also suggests the Supreme Court's holding in *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294 (1984), that release on personal recognizance satisfies the "in custody" requirements for habeas corpus purposes, means he was seized when he had to attend state court proceedings, but this statutory holding does not bind us here. *See id.* at 300–01.

## C. Claims Against the City

Since his First or Fourteenth Amendment rights were not violated, Brown cannot maintain a § 1983 claim against the City. *Torgerson v. Roberts Cnty. of S.D.*, 139 F.4th 638, 646 (8th Cir. 2025).

## III. State Law Claims

There is some disagreement as to whether the operative complaint properly alleges all Brown's state law claims. The district court reached the merits of the claims and defendants have not argued waiver, so we consider the merits, too.

First, it was "within the district court's discretion to exercise supplemental jurisdiction [on Brown's state law claims] after dismissal of the federal claim" because they "derive from a common nucleus of operative fact, and if considered without regard to their federal or state character, are such that they ordinarily would be expected to be adjudicated in one judicial proceeding." *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249, 1248 (8th Cir. 2006) (per curiam). "[J]udicial economy, convenience, [and] fairness" supported the court's decision because Brown's federal and state claims overlap and discovery in this case revealed Brown's state law claims necessarily fail. *See Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 933 (8th Cir. 2013). Brown argues that the district court abused its discretion because comity interests disfavored the district court's exercise of supplemental jurisdiction, but "[t]he causes of action are not novel, and there is little basis for dispute as to the resolution of Brown's state-law claims as they involved well-understood and settled principles of Arkansas law," *id.*

Turning to the merits, Brown's Arkansas Whistle Blower Act claim fails because, as noted above, he didn't suffer an adverse employment action. *See* Ark. Code Ann. § 21-1-603(a)(1) (requiring "adverse action against a public employee"); *Barrows v. City of Fort Smith*, 360 S.W.3d 117, 124 (Ark. 2010) ("Pursuant to section 21-1-602(1), an 'adverse action' means to discharge, threaten, or otherwise

discriminate or retaliate against a public employee in any manner that affects the employee's employment, including compensation.").

Brown's Arkansas malicious prosecution claim does no better because there was probable cause to charge him with abuse of office and bribery. *See Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 922 S.W.2d 327, 331 (Ark. 1996) ("Absence of probable cause is an essential element in a claim for malicious prosecution."). There is no dispute that the parolee stated that Brown took his money, which is probable cause for abuse of office. Ark. Code Ann. § 5-52-107(a) (a public servant commits abuse of office if "with the purpose of benefiting in a pecuniary fashion . . . [he] knowingly (1) [c]ommits an unauthorized act which purports to be an act of his or her office; or (2) [o]mits to perform a duty imposed on him or her by law or clearly inherent in the nature of his or her office."). And it is undisputed that Heard stated that Brown took the parolee's money and that Brown tried to give Heard a cut of the proceeds, presumably to keep quiet, which is probable cause for witness bribery. *Id.* § 5-53-108(a)(1) (a person is guilty of witness bribery if he "[o]ffers . . . any benefit upon . . . a person he [] believes may be called as a witness with the purpose of [] influencing the testimony of that person").

Brown's abuse of process claim also fails because he never claimed that Heard or Evans abused a legal process after it was set in motion. *See S. Ark. Petroleum Co. v. Schiesser*, 36 S.W.3d 317, 323 (Ark. 2001). There is no dispute that Heard told Evans about the alleged theft and that Evans in turn referred the matter to the prosecutor for investigation. Brown argues that these allegations were false, but because his claim is that "the process was originally issued with malice and without probable cause," the proper claim would be for malicious prosecution, not abuse of process. *See Union Nat'l Bank of Little Rock v. Kutait*, 846 S.W.2d 652, 654 (Ark. 1993).

And Brown's defamation claim fails because there is no genuine dispute that Evans's statements to the police departments that Brown was under investigation

were truthful.  *Sawada v. Walmart Stores, Inc.*, 473 S.W.3d 60, 67 (Ark. Ct. App. 2015) (a defamatory statement must be false).

## IV.

Affirmed.

_____