NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0173n.06

No. 23-5913

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 19, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| GREGORY S. SISTRUNK, as Administrator of the Estate of Williene Sistrunk, | ) ) ) | |
| Plaintiff - Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| CITY OF HILLVIEW and CHRISTOPHER BOONE, | ) ) ) | OPINION |
| Defendants - Appellees. | ) ) | |

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

**PER CURIAM.** In the early morning hours, a SWAT team broke through Williene Sistrunk's front and back doors to execute a search warrant. Police removed the then-86-year-old Sistrunk from her bed at gunpoint, and pulled her son and great-grandson out of the home in handcuffs. But none of these people had committed a crime. Instead, police were looking for evidence of a robbery committed by Cedric Alexander, Sistrunk's grandson, who listed the address on his driver's license and car registration. This dramatic incident and a host of serious allegations notwithstanding, this case boils down to a simple issue: whether police had probable cause to believe that Alexander stored evidence of his crime at this house. Because the only officer-defendant left in this case is entitled to qualified immunity and because the City of Hillview is not municipally liable, we AFFIRM the district court's judgment.

## I.  BACKGROUND

Hillview Police responded to a robbery at a Hampton Inn in Hillview, Kentucky, on May 3, 2019.  According to the victim, after assaulting the victim the suspect made off with approximately $260 in cash, as well as the keys to the cash drawer that he stole.  The victim also described the suspect as a Black male in his 20s.  And she reported that he wore a red shirt, blue jeans, and drove a fairly new white Mustang.  Hillview Police, working in conjunction with Louisville Metro Police Department ("LMPD"), identified the suspect as Cedric Alexander on May 16, 2019.  Images of Alexander from hotel surveillance matched his day-old operator's license photo in which he wore the same red or orange shirt, and images of the white Mustang matched photos that LMPD had.  Both the day-old operator's licence and two-month-old auto registration listed 121 North 36th Street in Louisville, Kentucky, as Alexander's residence.

Based on this information, Officer Christopher Boone of the Hillview Police sought a search warrant for 121 North 36th Street on May 30, 2019.  The affidavit sought permission to search both the 2015 white Ford Mustang seen at the Hampton Inn and the residence for "[c]lothing worn during [the] robbery, more particularly a Chicago Bulls hat and a red or orange t-shirt, also a gray back pack that was worn during [the] robbery," as well as "[a] [c]ash drawer and keys that were removed from the hotel during the robbery, and $260.78 that was stolen from the business." R. 33-3 (Aff. at 1) (Page ID #392).  Boone wrote in by hand that the address listed on Alexander's operator's license and vehicle registration was the residence to be searched.  Bullitt Circuit Court Judge Rodney Burress issued the warrant that same day.

On May 31, 2019, LMPD executed the warrant.  LMPD breached the front and back doors in military-style clothing and, with guns drawn, removed three individuals.  One of the individuals

was Williene Sistrunk, the 86-year-old homeowner. Police removed Sistrunk from the house after pointing a shotgun at her; she was not fully clothed when forced to leave her home. While LMPD officers secured the inside of the home, Hillview officers, including Boone, waited with Sistrunk outside. Hillview Police officers explained that they were looking for Cedric Alexander, who had listed the address as his residence. Sistrunk clarified that Alexander did not live at the house.

After the initial sweep, Hillview Police brought Sistrunk, her son, and her great-grandson back into the home, and Boone sat with Sistrunk on her couch to explain why the police obtained a warrant, the nature of Alexander's alleged crime, and their investigation. During this time, Hillview Police officers searched the home for evidence of Alexander's crime. Neither LMPD nor Hillview Police found Alexander or any relevant evidence at the residence.[1]

Following the granting of a motion to dismiss as to certain defendants, the district court granted the remaining defendants summary judgment on all remaining claims. Relevant here, the district court found that Boone was entitled to qualified immunity, because Sistrunk failed to create a genuine dispute that Boone lied to or misled the issuing magistrate or that Boone unreasonably relied on a warrant that was clearly lacking indicia of probable cause. Finally, the district court found that Hillview was entitled to summary judgment on the municipal-liability claim.

## II. DISCUSSION

What remains on appeal is Sistrunk's § 1983 claim that Boone unconstitutionally searched her home, and a municipal-liability claim against Hillview related to the same. But Boone is

---

[1]Since this case was filed, Sistrunk died, and her estate has replaced her in this case. For ease of reference, however, we continue to refer to Sistrunk rather than to her estate when referring to the plaintiff in this case.

entitled to qualified immunity on the search claim, and Hillview is not responsible for any alleged constitutional violation.

## A. Standard of Review

We review de novo a grant of summary judgment, construing the evidence "in the light most favorable to the nonmoving party." *Helphenstine v. Lewis County*, 60 F.4th 305, 314 (6th Cir. 2023) (quoting *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017)). A grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## B. Probable Cause

Probable cause is assessed under a "practical, nontechnical" totality-of-the-circumstances test. *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). We review a judicially approved warrant to determine whether the circumstances provided "a 'substantial basis for concluding' that a search would uncover evidence of wrongdoing." *Id.* at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)) (alterations adopted). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

Two connections, or "nexuses," must be supported by probable cause for a warrant to issue to search a place. First, probable cause must support that "the items sought are 'seizable by virtue of being connected with criminal activity.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 n.6 (1978)). Second, a nexus between the items sought and the location to be searched must be supported by probable cause. *See id.*; *see*

*also United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).  Put differently, an affidavit must provide a sufficient basis for believing that evidence of a crime will be found in the location to be searched.  *See, e.g.*, *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006).

### C.  Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275 (6th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (internal quotation marks omitted).  These two prongs of the inquiry may be assessed in either order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In order "[t]o be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'"  *Rhodes v. Michigan*, 10 F.4th 665, 679 (6th Cir. 2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The Supreme Court has instructed lower courts to consider whether the right is clearly established "in light of the specific context of the case, not as a broad general proposition."  *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

### D.  Boone is Entitled to Qualified Immunity

The district court found that Boone was entitled to qualified immunity because Sistrunk "ha[d] not pointed to anything in the record or caselaw that would lead a reasonable jury to

conclude that [the magistrate's] finding of probable cause was unlawful or the search of Sistrunk's house unconstitutional." R. 40 (Op. at 10) (Page ID #487). Accordingly, the issuing magistrate did not "so obviously err[]" such that "any reasonable officer would have recognized the error." *Id.* (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 556 (2012)). On appeal, Sistrunk argues principally that Boone is not entitled to qualified immunity because the warrant clearly failed to establish probable cause to believe that Alexander lived at the residence. We agree with the district court that Boone did not violate clearly established law by relying on the search warrant, and therefore that Boone is entitled to qualified immunity.[2]

A reasonable officer would not have known that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). Put differently, our caselaw would not have put Boone on notice that the judicially approved warrant clearly failed to establish probable cause to believe that Alexander resided at the target residence. *See, e.g.*, *United States v. White*, 874 F.3d 490, 506 (6th Cir. 2017) (explaining that in the parallel good-faith context, suppression is unwarranted if an affidavit "contains sufficient factual content that, when read in a holistic, common-sense manner, establishes a 'minimally sufficient nexus'" between criminal activity and the residence (quoting *Carpenter*, 360 F.3d at 596)).

---

[2]The district court assessed both Boone's pre-warrant and post-warrant conduct. With respect to pre-warrant conduct, the district court found that Boone neither lied nor recklessly misled the issuing judge. Regarding the risk-matrix that Boone completed prior to execution of the warrant, we agree that a mere mistake, without more, does not prove recklessness. On appeal, Sistrunk's points appear focused on whether probable cause existed, not whether Boone misled the issuing judge. Regardless, to succeed on her § 1983 claim under this theory, Sistrunk "must make 'a substantial showing that the [officer] stated a deliberate falsehood or showed reckless disregard for the truth.'" *Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003)). Sistrunk fails to show that Boone's mistakes came from anything more than negligence, so this claim fails.

The warrant affidavit tied Alexander to the residence through Alexander's operator's license and through his auto registration. Alexander's operator's license, just a day old when the robbery occurred, listed the residence as Alexander's. Similarly, Alexander's white Mustang, which was used during the robbery and was caught on camera at the scene, was registered to 121 N. 36th Street as of March 7, 2019—less than two months prior to the robbery. Based on the facts that Alexander's auto registration was less than two months old and, crucially, his driver's license just a day old when he committed the robbery, a reasonable officer would not have considered barebones a warrant that relied on this evidence to establish the requisite nexus to the home. None of our cases would have put Boone on notice that something more was required.

Sistrunk's arguments to the contrary are unpersuasive. Sistrunk highlights a number of disputed facts concerning Boone's alleged mistakes in filling out a risk matrix prior to executing the warrant and whether he complied with department policies. But these unrelated issues generally pertain to *execution* of the warrant, not whether the warrant was supported adequately by probable cause. Sistrunk relies principally on *United States v. Trujillo*, No. 03-40134-01-RDR, 2004 WL 813645 (D. Kan. Mar. 8, 2004), an out-of-circuit district-court opinion, to contend that Boone should have known the warrant plainly lacked indicia of probable cause. But *Trujillo* is inapposite. In that case, the police knew that the residence to be searched did not belong to the defendant's son, who was the focus of the affidavit, but rather belonged to the defendant, who was not implicated in criminal activity. 2004 WL 813645, at * 4. Here, police relied on a warrant that appeared to establish the residence as Alexander's.

Finally, Sistrunk argues that Boone violated Hillview Police policy by failing to have a supervisor review and approve his affidavit. Sistrunk has not pointed us to any case that suggests

that the lack of a supervisor's approval automatically renders reliance unreasonable. *See, e.g.*, *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (explaining that a violation of department policy standing alone does not mean that an officer has committed a constitutional violation).

In sum, Sistrunk has not established that Boone violated clearly established law by relying on the warrant in this case. Boone is thus entitled to qualified immunity.

**E. The City of Hillview is not Liable Under *Monell***

Finally, Sistrunk contends that Hillview is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for providing inadequate training and for its alleged "custom of tolerance or acquiescence in search warrants being obtained on residences without probable cause." Appellant Br. at 18. Sistrunk develops only this first theory of liability, so we deem the other forfeited. Sistrunk argues that, because Hillview does not mandate search-warrant training except upon hire, the municipality is liable under a failure-to-train theory. We disagree.

Sistrunk seeks to establish a failure to train by proving "'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential' for a constitutional violation." *Shadrick v. Hopkins County*, 805 F.3d 724, 739 (6th Cir. 2015) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). But Hillview police officers do receive training. As an ongoing matter, officers receive mandatory training on Hillview's policies, which include protocols for obtaining and executing search warrants and how to determine probable cause. Upon hire, officers are mandated to attend the Department of Criminal Justice Training, which includes five specific classes. Sometimes specific search-warrant training is part of this curriculum. Beyond these required trainings—both ongoing internal policy training and the training upon

8

hire—Hillview offers elective courses, but Boone had not taken the elective search-warrant training course. Sistrunk has not contended that any of this training is in fact inadequate. Instead, she argues that this training functionally amounts to no training.

A "failure to train is not measured by information retention or whether 'better or more training' would have avoided the incident," but instead by whether the municipality "'completely disregarded' its duty to train its officers" on recurring scenarios. *Harris v. City of Saginaw*, 62 F.4th 1028, 1038 (6th Cir. 2023) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989)). Because Hillview put forth record evidence that it trains its officers and Sistrunk failed to rebut that evidence, Hillview is entitled to summary judgment on this claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.